Evans v. Carey.

EVANS *vs.* CAREY.

[ASSUMPSIT ON COMMON COUNTS—PLEAS, STATUTE OF LIMITATIONS, AND DISCHARGE
IN BANKRUPTCY—SUBSEQUENT PROMISE.]

1. *What will remove bar of statute of limitations.*—To revive a debt barred by the statute of limitations, there must be a promise by the debtor to pay the debt; but this promise may be either express or implied, conditional or unconditional. If implied, there must not only be a clear and distinct recognition of the debt, but it must be unaccompanied with any expressions which leave it doubtful whether the debtor was willing to waive the benefit of the statute; but if the promise is express, though conditional or dependent, proof of the performance of the condition is all that is required.

2. *Construction of subsequent promise, when question of law.*—Where the words relied on to take a case out of the statute of limitations, amount in law to an express promise, there is no necessity for referring their construction to the jury, but the court may instruct them as to the legal effect of the words.

3. *Release of partner.*—A parol agreement to release one partner, does not operate to discharge the debt as against his co-partner.

4. *What will revive debt discharged by bankruptcy.*—Nothing less than an express promise will revive a debt which is discharged by a decree in bankruptcy; but it is not necessary that the words should be spoken to the creditor or his agent, although the fact that they were spoken to a third person may well be considered, in connection with the other facts, in determining whether they amount in law to an express promise.

5. *What words amount to an express promise.*—Where plaintiff met defendant at the house of a common relative, and refused to speak to him, and defendant afterwards complained of this to his relative, who then told him, that plaintiff "considered he had treated him badly, in permitting him to suffer largely as his endorser in bank"; at which defendant "seemed surprised, and said, *if plaintiff had paid anything on account of such endorsement, he (defendant) was able and willing to pay it to plaintiff,"—held,* that the words amounted in law to an express promise, and, on proof of the payment by plaintiff, took the debt out of the statutes of limitation and bankruptcy.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. MCKINSTRY.

ASSUMPSIT, on the common money counts, by Edward Carey against Matthew O. Evans, to recover a sum of money paid by plaintiff to the Milledgeville Bank, as accommodation endorser of T. & R. Evans, of which firm defendant was a partner; pleas, *non assumpsit,* payment, set-off, the statute of limitations, and the defendant's discharge in bankruptcy, on

all of which pleas issue was joined.  To avoid the bar of the statute of limitations and the decree in bankruptcy, the plaintiff relied on a subsequent promise; and the only proof of this promise was made by one George G. Henry, whose testimony was as follows: "Plaintiff, who is the father-in-law of witness, was at his house, in Mobile, in January or February, 1852; and witness, not knowing of any feeling between him and defendant, invited defendant, who had married the sister of plaintiff's wife, to dine at his house.  Witness was not at dinner; but defendant came to him, and complained of the treatment which he had received from plaintiff on that occasion at witness' house, telling witness that plaintiff had refused to speak to him.  Witness then informed defendant, that plaintiff considered that he (defendant) had treated him badly, in permitting him to suffer largely as defendant's endorser to the Milledgeville Bank.  Defendant seemed surprised,—said, if Mr. Carey (plaintiff) had paid anything on account of such endorsement, he (defendant) was able and willing to pay it to the plaintiff.  Witness expressed his opinion that this would be satisfactory to plaintiff; and afterwards, at night, witness told Mr. Carey of this interview with the defendant.  Mr. Carey said, he would be very glad if he did it, and that he would make out the account, and send it to witness.  Plaintiff went home to Georgia, and, after some time, sent the account"; which is made an exhibit to the bill of exceptions, and which was offered in evidence by plaintiff, without objection, so far as related to the items concerning the debt to the Milledgeville Bank.  Henry further testified, that he had this account copied, and a copy sent to the defendant; that defendant afterwards sent him, in return, a statement of the matters of account between him and plaintiff, which, in effect, denies any indebtedness on his part; and that he was not acting, in the interview between himself and defendant, as the agent of plaintiff.

There was evidence, also, tending to show that the plaintiff had, by a parol agreement, for valuable consideration, released Thomas O. Evans, the defendant's late partner, from liability on this claim; and the defendant insisted that the agreement also released him.

The court charged the jury as follows :—

"1. That the remark made by the defendant to the witness Henry, as stated by Henry in his testimony as above set out, if the jury believed it, removed the bar of the statute of limitations, and also deprived the defendant of the benefit of his discharge in bankruptcy; and that that remark, of itself, had the effect to revive the debt, so far as the jury should believe plaintiff had proved payments on account of his endorsement for defendant to the Milledgeville Bank, and for which plaintiff has not been reimbursed, notwithstanding the statute of limitations and the defendant's discharge in bankruptcy might otherwise have barred a recovery therefor."

2. That the release made by plaintiff to Thomas C. Evans did not have the effect to discharge defendant from his liability on the claim sued for in this action.

The defendant excepted to these charges, and he now assigns them as error.

E. S. DARGAN and WM. G. JONES, for appellant.—I. *As to the bar of the statute of limitations:* There was no such promise or admission proved by Henry as would remove the bar of the statute of limitations, according to the later and better decisions on the subject. The fullest and best case on the subject is that of Bell v. Morrison, 1 Peters, 357–362, which has since been followed in Moore v. Bank of Columbia, 6 Peters, 86–93, and has been approved and acted on by almost every court in the United States since that time.—See the cases collected in Angell on Limitations, 213–245. Its doctrine is in accordance with the modern decisions of the English courts, commencing with A'Court v. Cross, 3 Bing. 329, (11 E. C. L. R. 124,) and followed by numerous others; and has been approved by this court, in Crawford v. Childress, 1 Ala. 482. The court is also referred, on this point, to the following cases: Lunt v. Stevens, 24 Maine, 534; Ventris v. Shaw, 14 N. H. 422; Ayers v. Richards, 12 Illinois, 146; Carrath v. Paige, 22 Vermont, 179; Purdy v. Austin, 3 Wendell, 187. From an attentive examination of these cases the following propositions seem deducible, to-wit:

1. That a new promise, express or implied, is indispensable to remove the bar. No admission, as such, and of itself, can have this effect. An admission may, indeed, be so clear and

unequivocal, that a new promise may be inferred from it, or it may be evidence of a new promise; but yet it is the promise, and not the admission, which removes the bar. This is sufficiently evident from the fact, that the clearest and most unequivocal admission of a present subsisting debt, if accompanied by words or circumstances which repel the idea of a promise, will not remove the bar; as if a man, when applied to for payment of a debt, say, 'I admit that this is a just debt, and that it is now due and unpaid, but it is barred by the statute of limitations, and I shall rely on that as a defense.'

2. Every promise, so far as applicable to this subject, is either express or implied, and also either positive or conditional. An express and an implied promise stand in contradistinction to each other: if express, it cannot be implied; and if implied, it cannot be express. So, a positive and a conditional promise stand in contradistinction : if positive, it cannot be conditional ; and if conditional, it cannot be positive. Every promise, too, must have two of these qualities; that is, it must be express or implied, and, at the same time, positive or conditional. Every promise, therefore, must be either, 1st, express and positive; or, 2d, express and conditional; or, 3d, implied and positive; or, 4th, implied and conditional. A promise of the first class will, of itself, suffice to remove the bar of the statute ; a promise of the second class will not, of itself, remove the bar of the statute, but it must be shown that the condition has happened or been performed; a promise of the third class will, of itself, remove the bar; and a promise of the fourth class will not, of itself, suffice to remove the bar.

In the case at bar, it is insisted, first, that there is no promise at all, either express or implied; or, secondly, if any promise is proved, that it is implied and conditional, and therefore insufficient to remove the bar of the statute. Manifestly no express promise is proved. Is there any implied promise proved? It is said in the cases that a new promise may sometimes be implied from acts, as, for example, from part payment of a debt barred by the statute; and it may also sometimes be implied from an admission. But it is not every admission that will have this effect: on the contrary, according to the authorities, very few admissions will have

this effect. To have the effect of raising an implied promise sufficient to remove the bar of the statute, the admission must be a clear, direct, express, positive, unqualified, unequivocal, and unconditional admission of a present subsisting debt, which the party is liable and willing to pay, unaccompanied by any circumstances negativing the idea of a promise to pay. Every one of these expressive adjectives is taken from adjudged cases, decided by courts of the highest authority.—11 Wheaton, 315; 1 Peters, 357; 6 Peters, 86; 3 Bing. 329; 5 Bing. 349; 1 Bibb, 443; 14 N. H. 422; 24 Maine, 534; 12 Illinois, 146; 22 Vermont, 179; 3 Wendell, 187; 1 Ala. 482.

In Bell v. Morrison, 1 Peters, 357, it is decided that, "if the expressions be equivocal, vague, and indeterminate," "they ought not to go to the jury as evidence of a new promise." In this case, there was not any admission of indebtedness; or, at least, it was neither a clear, nor express, nor positive, nor unqualified, nor unequivocal, nor unconditional admission; but, on the contrary, was equivocal, vague, indeterminate, qualified, and conditional. The word "*if*," of itself, prevents it from being a positive, or unqualified, or unconditional admission. Besides, it was made under circumstances which negative the idea of a promise to pay. Evans was "surprised," and obviously indignant, that any such claim was pretended. His language and manner, as proved by Henry, so far from being a clear and unqualified admission of indebtedness, were rather an indignant denial of any indebtedness; and when the particulars of the claim were afterwards furnished by Carey, through Henry, Evans promptly replied by an account denying, in effect, any indebtedness. Yet the court did not even leave this evidence to the jury, to infer a promise; but charged them, that it was, in itself, sufficient to remove the bar of the statutes of limitations and bankruptcy.

II. But, even if the admission were such as to raise an implied promise sufficient to remove the bar of the statute of limitations, *it certainly was not sufficient to deprive the defendant of the protection afforded by his discharge in bankruptcy.* The courts have generally held, in analogy to the decisions under the statute of limitations, that the old debt discharged by bankruptcy is a sufficient consideration to support a new

express promise to pay it, made by the bankrupt after his discharge; but this can scarcely be sustained in principle, and has been questioned by many judges, and expressly denied by at least one court.—13 Sm. & Mar. 289–93. There is, however, a manifest distinction, between the effect of the bar created by the statute of limitations, and the discharge effected by bankruptcy. The language of the statute of limitations applies not to the debt itself, but to the action for its recovery; it bars the action, but does not discharge or extinguish the debt. On the contrary, the language of the bankrupt act not only bars the action, but in addition, and in express terms, declares that the debt is discharged. The courts have recognized and acted on this distinction. Thus, if the right of action on a note, which is assignable by endorsement, be barred by the statute of limitations, and the maker afterwards promise the payee to pay it, and the payee afterwards assign it to a third person,—such third person may sue the maker on the note, and defeat the plea of the statute by proof of such new promise; but if a bankrupt make a new promise to the payee, and the payee afterwards assign the note to a third person, who sues the maker, the plaintiff cannot avail himself of the new promise to avoid the plea of bankruptcy,—Moore v. Viele, 4 Wendell, 420; Wardwell v. Foster, 31 Maine, 558. Part payment, too, will remove the bar of the statute of limitations, but will not do away with the effect of a discharge in bankruptcy.—Stark v. Stinson, 3 Foster, 259. Though an implied promise may remove the bar of the statute of limitations, all the cases agree that nothing but a clear and express promise can overcome a discharge in bankruptcy. 1 Parsons on Contracts, 308; Lynbuy v. Weightman, 5 Esp. 198; Mucklow v. St. George, 4 Taunt. 613; Brook v. Wood, 13 Price, 667; Payne v. Eden, 3 Caines, 218; Merriam v. Bayley, 1 Cushing, 77; Depuy v. Swart, 3 Wendell, 139; Porter v. Porter, 31 Maine, 169; Prewett v. Caruthers, 12 Sm. & Mar. 491; Linton v. Stanton, 4 La. Ann. R. 401–6; Brown v. Collier, 8 Humph. 510; 3 Foster, 259; 9 Ala. 320. And this new promise, being in the nature of a new action, must be made to the plaintiff himself, or to his authorized agent.—3 Wendell, 136; 12 Sm. & Mar. 491. The promise here relied on was not made to the plaintiff, nor to his author-

Evans v. Carey.

ized agent, but was a mere declaration to a stranger. The words themselves do not contain an express promise, but, at most, only show ability and willingness to pay, from which a promise might possibly be implied.

ROBERT H. SMITH, *contra.*—The questions are two: 1. Does the statute of limitations apply to the case ? 2. What is the effect of the subsequent promise proved by Henry ?

I. Although the doctrine is familiar, that exceptions will not be engrafted by construction on the statute of limitations; yet, when a disability to sue is created by a different statute, the period of such disability is excluded in computing time under the statute, and the bar must be complete without it. Thus, the statute which exempts an executor or administrator from suit for six months, stops, during that time, the running of the statute of limitations.—Hutchison v. Tolls, 2 Port. 44; Houpt v. Shields, 3 Port. 247. In this case, the bankrupt act, by operation of law, created a destruction of plaintiff's remedy, until it was revived by a subsequent promise; and, by analogy to the cases above cited, the intervening period must be exempted in the computation of time under the statute. If this be so, no question arises under the statute of limitations.

II. The promise proved by Henry was sufficient to remove the bar of the statute of limitations, if it applies to the case; and also to remove the bar of bankruptcy. The subject-matter of the conversation between Henry and Evans was distinctly comprehended and understood by them; and the amount of the debt was known. The conversation began by a distinct recognition of the debt; and the promise was clear and unambiguous. It was contingent in form, but absolute and unconditional in substance; that is, it depended on nothing to transpire in future, but took effect the moment it was made. A right of action at once accrued on it, and the statute of limitations began to run anew from the moment it was made. It announced, in clear and spirited language, an ability, and a willingness to pay; and this was a promise to pay.—Dearing v. Moffit, 6 Ala. 776; Ross v. Ross, 20 Ala. 105; Townes and Nooe v. Ferguson, 20 Ala. 150; Croom v. Wheat, 7 Ala. 349; Watson v. Byers, 6 Ala. 393; Pratt v. Russell, 7 Cushing,

462; Way v. Sperry, 6 Cushing, 239; 4 Sandford's S. C. R. 429; 12 Penn. State R. (by Jones), 264; 13 *ib.* 541; 19 Ala. 319; 7 Johns. 37; 14 *ib.* 198; 6 Barbour's S. C. R. 583; 6 Gill, 82; 32 Maine, 181; 13 Mees. & W. 766; 18 Vermont, 845; 1 Greenl. 163; Angell on Limitations, 245; 2 Greenl. Ev. §§ 440, 444; 4 Pick. 110.

Our courts have drawn no distinction, between the operation of the statute of limitations, and of the bankrupt act; but have steadily adhered to the true principle, that there is a perfect analogy between the two; and that a promise, or acknowledgment, which will remove the bar of one, will equally remove the bar of the other.—Herndon v. Givens, 16 Ala. 261; Dearing v. Moffitt, 6 Ala. 776; Ross v. Ross, 20 Ala. 105; 20 Ala. 150. The revival of the debt rests, in each case, on the moral obligation, which is the same; and the consideration, therefore, is the same. If any distinction were made between the two cases, the discrimination should be in favor of the bankrupt's promise; for, while the consideration and moral obligation are the same, the creditor is barred by the statute on account of his own willful neglect, but bankruptcy bars him in spite of all the vigilance he can use.

The promise relied on, though made to Henry, was *to pay to the plaintiff*; and all the authorities hold, that such a promise gives a right of action to the plaintiff.—Huckabee v. May, 14 Ala. 263; 18 Ala. 316; Moore v. Viele, 4 Wendell, 422; Soulden v. Van Rensselaer, 9 Wendell, 297. It is not necessary, to remove the bar of bankruptcy, that the promise should be made to the creditor or his agent.—5 Penn. State R. (by Barr), 369; 13 Penn. State R. (by Harris), 541; 11 Penn. State R. (by Jones), 13; 4 Porter, 221; 10 Pick. 110; 9 Wendell, 293; 6 Cushing, 238. But if this were necessary, still the promise here proved would be sufficient. Henry was recognized and treated, throughout the whole transaction, as the agent of both parties. He who volunteers to communicate between two persons who are at enmity, and who is accepted and communicated with by both, is, *quoad hoc,* the agent of both. And the subsequent conduct of Evans and Carey, in reference to their accounts, shows conclusively that they recognized Henry as their common agent.

Conceding that there is a distinction established between the operation of the statute of limitations and the bankrupt act—that one destroys the debt, while the other only bars the remedy; yet the appellant takes nothing by the concession. An express promise, in either case, revives the debt; and the authorities already cited show that this is an express promise.

The cases cited for appellant, on examination, will be found to establish simply these two propositions : 1st, that a promise to pay a debt barred by bankruptcy, is not transferrable; and, 2dly, that loose and uncertain assertions of an intention to pay, or casual remarks, made to third persons, will not remove the bar of bankruptcy. It is not necessary, in this case, to controvert either of these propositions.

GOLDTHWAITE, J.—We regard the principle too well settled, at this day, to admit of controversy, that to revive a debt barred by the statute of limitations, there must be a promise by the debtor to pay the debt. This principle was fully discussed and settled in the case of Bell v. Morrison, 1 Peters, 357, which decision has been followed in most of the States.—Angell on Lim. (2d ed.) 228, 245. The promise may be either express or implied, conditional or unconditional. If implied, it can only be so by a clear and distinct recognition of the debt as an existing one; and even then, if the admission is accompanied by expressions which leave it doubtful whether the party making them was willing to waive the benefit of the statute, the law will not imply a promise in such a case. The statute is emphatically one of repose; and a just regard for its intention requires its application to every case which is not exempted from its operation, either by an express promise, or by facts which clearly imply one.

In the present case, there is no admission of the debt. We say this, for the reason, that the relation of debtor and creditor could not exist, as between these parties, unless Carey had made the payment as the endorser for the appellant; and the fact of this payment was not admitted. But it is conceded that this makes no difference, if there was an express promise by the appellent to pay the amount which Carey had paid for him. The only effect of such a promise would be, to require the payment to be proved; and that being done,

the debt proved, although barred by the statute, would be a consideration which would support the promise.—Ang. on Lim. (2d ed.) 251, 252. If Evans had said, "I am surprised at Mr. Carey saying that he has paid any thing as my endorser to the Milledgeville Bank; but if he has paid anything upon such endorsement, I will repay him the amount he has paid," that would have been a clear case of an express promise; and if what he did say had the same meaning, it must have the same effect. There is no precise form of words required. The true test is, did the party mean that he would pay the amount of the debt? If he did, and the words used by him are susceptible of no other construction, then they amount in law to an express promise. Applying this test in the present case, we do not see how there can be any doubt. If a man, when speaking of a debt barred by the statute, or discharged by bankruptcy, say, without any qualification, that he is able and willing to pay to the creditor, he certainly means that he will pay. What else can he mean? We must give the words a common-sense construction, such as would be placed upon them in the ordinary intercourse between men; and taking them in that sense, we regard them as amounting to an express promise to pay the plaintiff the amount he had paid for him as endorser.

It is supposed by the counsel for the appellant, that the conclusion which we have attained is in conflict with Bell v. Morrison, *supra*. In that case, there was an unascertained balance due, which the debtor expressed himself anxious and willing to settle; and he finally made an offer of less than one half of the amount proved to be due, by way of compromise, which was not accepted. The term used, "settle," was not only ambiguous, and wholly indefinite, but, when viewed in connection with the circumstances with which it was used, leaves the mind in doubt whether any thing more was intended than the ascertainment of the amount due. But if it be conceded that the term was used with reference to the balance when ascertained, it is equally indefinite. The amount was uncertain, and the party was anxious and willing to "settle," that is, to close it; but as to how, or on what terms, we are left entirely in the dark. We agree entirely with the learned judge who delivered the opinion in the case referred to; which

is, in effect, that the language relied on was entirely too loose, and indeterminate to amount to an express promise, or to raise an implied one. If, however, the debtor had said, "whatever amount is due upon the account, I am able and willing to pay you,". then it would have been identically the case at bar, and we cannot doubt that the decision of the court would have been different.

What we have said, is decisive of the case, both with regard to the statute of limitations, and bankruptcy. If the language stated by the witness Henry was used, it amounted in law to an express promise to pay the plaintiff. There was no necessity for referring its construction to the jury; and it not only operated to prevent the bar of the statute, but exempted the debt from the operation of the discharge in bankruptcy.—Moore v. Viele, 4 Wend. 420; Dearing v. Moffit, 6 Ala. 776; Branch Bank v. Boykin, 9 Ala. 320.

That the parol agreement to release one partner does not operate to discharge a debt as against the other, is shown in Harrison v. Close, 2 Johns. 448; Rowley v. Stoddard, 7 John. 209; Shaw v. Pratt, 22 Pick. 308; Walker v. McCulloch, 4 Greenl. 421.

Judgment affirmed.

NOTE BY REPORTER.—The foregoing opinion was delivered at the June term, 1855, but was afterwards withdrawn, and a re-argument awarded; and at the June term, 1856, the following opinion was pronounced.

RICE, C. J.—Nothing less than an express promise to pay will revive or renew the legal obligation of a debt discharged by a decree in bankruptcy. And therefore, if the words spoken by Evans to Henry amount to nothing more than "loose declarations," or mere "admissions," or the mere expression of the obligation in *foro conscientiæ* which Evans felt existed after his discharge in bankruptcy, they are insufficient to avoid the effect of that discharge.—Bartlett v. Peck, 5 La. Annual Rep. 669; Linton v. Stanton, 4 *ib*. 402; Prewett v. Caruthers, 12 Sm. & Marsh. 491; Pool v. Relfe, 23 Ala. R. 701; Stark v. Stinson, 3 Foster's Rep. 259.

But, if those words amount in law to more than all these, and to an express promise to pay Carey the sum he had paid

as the endorser of Evans to the Milledgeville Bank, they are
sufficient to avoid the effect of that discharge, as to the sum
so paid by Carey. If such promise was in fact made, it is
immaterial whether the words which constitute it were uttered
to Carey himself, or to a third person in his absence. If the
words spoken by Evans amount in law to such promise,
neither reason nor law would justify us in deciding, that the
promise is deprived of all efficacy, by the mere fact, that the
words were uttered to Henry, and not to Carey or his agent.
Such a decision would commit us to the following extrava-
gant propositions, to-wit: 1st, that in order to avoid the
effect of a discharge in bankruptcy, the creditor must not
only prove that the bankrupt made an express promise to pay
to him the *debt, but must go further, and prove also* that the
words which constitute the promise were uttered *to him, or to
his agent*; 2d, that a bankrupt was disabled from reviving a
debt in favor of an estate upon which no administration had
ever been granted, by any words he might utter whilst the
administration of the estate remained vacant; 3d, that a
bankrupt could not revive a debt in favor of a living creditor,
by any words he might speak, unless he could find the cred-
itor or his agent, and speak the words to the one or the
other; 4th, that although it is a well settled principle, that if
A. promises B. to pay a third person a sum of money, and
the promise is founded on a sufficient consideration, such
third person may maintain assumpsit on the promise, yet this
principle cannot, under any circumstances, be applied to a
promise made by a bankrupt. We cannot sanction a position
which gives countenance to propositions so entirely indefensi-
ble. On the contrary, we decide, that an express promise by
a bankrupt to pay to the creditor a particular debt discharged
in bankruptcy, will avoid the effect of such discharge, as well
when the words constituting such promise are spoken *to a
third person*, as when they are spoken *to the creditor personally,
or to his agent*.—Huckabee v. May, 14 Ala. R. 263; Wynne
v. Raikes, 5 East, 515; Soulden v. Van Renssalaer, 9 Wend.
297; Besford v. Saunders, 2 H. Bl. 116; Edson v. Fuller,
2 Foster's R. 183; Haines v. Stauffer, 13 Penn. State Rep.
(by Harris), 541; McKinley v. O'Keson, 5 Barr, 369; Comfort
v. Eisenleis, 11 Penn. State Rep. (by Jones), 13; Way v.

Sperry, 6 Cushing's Rep. 238; Cogburn v. Spence, 15 Ala. Rep. 549; Herndon v. Givens, 19 Ala. R. 313.

In determining whether the words of the bankrupt amount in law to such express promise, the fact that they were spoken to a third person, and not to the creditor or to his agent, may be taken into consideration, with the other facts in evidence; for the sense of the words may best appear, from them and the cause and occasion of speaking them, considered together. And we will not say that there may not be cases, in which the question whether the words of a bankrupt amounted in law to an express promise to pay the debt to the creditor, would not turn upon the question whether they were spoken to a third person, or to the creditor.

But, allowing to Evans the benefit of the foregoing rules, and construing the charge of the court in connection with the evidence, we are satisfied there was no error in the con - clusion, that his words as stated by Henry in his testimony, as set out in the record, "avoided the effect of his discharge in bankruptcy, as to the sum paid by Carey as his endorser to the Milledgeville Bank." The complaint of Carey against Evans, made known through Henry, was *not* that Evans was unable to pay, but that, being able, "he had treated him badly *in permitting* him to suffer largely as defendant's endorser to the Milledgeville Bank." "The defendant seemed surprised, and said, if Mr. Carey (the plaintiff) had paid any thing on account of such endorsement, he, the defendant, *was able and willing to pay it to the plaintiff.*" Here is a signification by the words of Evans, taken according to their natural import, of an *intention* on his part to confer on the plaintiff *the right* to require payment of whatever amount he had in fact paid as his endorser to the Milledgeville Bank; and there is a total absence of evidence to repel the presumption arising from the natural import of the words, or to raise a doubt about his intention. Without adding any thing more, we adopt the opinion heretofore delivered in this case, as herein explained, as the opinion of this court, and affirm the judgment of the court below.