# Wolffe *v.* Eberlein.

*Action on Judgment ; Plea of Bankruptcy.*

| 74 | 99 |
|-----|-----|
| 128 | 418 |

1. *Debt discharged by bankruptcy ; how declared on.*—When a subsequent promise is made to pay a debt which has been barred by a discharge in bankruptcy, the creditor may sue directly on the new promise, or, at his election, on the original debt, and reply the new promise to a plea setting up the discharge in bankruptcy; and if the original debt was reduced to judgment before the new promise was made, he may sue on the judgment.

2. *Who is proper party plaintiff.*—A judgment is not a "contract, express or implied, for the payment of money," within the meaning of the statute which requires an action on such contract to be brought in the name of the party really interested (Code, § 2890); and an action on it is properly brought, notwithstanding its assignment, in the name of the original plaintiff, and revived in the name of his personal representative.

3. *Promise to assignor, or his agent, for benefit of assignee.*—A new promise to pay a debt which, after having been reduced to judgment, was barred by a discharge in bankruptcy, if made to the plaintiff in the judgment, or to his agent, enures to the benefit of the assignee, and will support an action on the judgment for his benefit.

4. *Validity of limited grant of administration.*—A grant of letters of

administration, which recites that A. B. "is hereby appointed the legal administrator of the said C. E., deceased, for the special purpose of conducting a suit at law instituted by the said C. E.," particularly describing it, is not void on its face; and it is not necessary that the record should affirmatively show that there was then a vacancy in the administration.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by Mrs. Celestine Eslava, against Frederick Wolffe; was founded on a judgment for $777, besides costs, which the plaintiff had recovered against the defendant, on the 18th March, 1868, in the City Court of Mobile; and was commenced on the 7th August, 1880. The plaintiff having died, pending the suit, her death was suggested on the record, and the action was revived in the name of George Eberlein as her administrator. After the revivor of the action, the defendant pleaded, "in short by consent, 1st, the general issue, with leave to give in evidence any matter which might be specially pleaded;" 2d, a discharge in bankruptcy, granted to the defendant on the 14th January, 1870, by the District Court of the United States at Mobile; 3d, *ne unques administrator;* and, 4th, a special plea averring that, before the commencement of the suit, Mrs. Eslava had transferred the said judgment to said George Eberlein individually, and had no interest in said judgment at the time of her death, and that the judgment had never been revived in the name of her personal representative, or of any other person. The plaintiff took issue on the first and third pleas, demurred to the fourth, and replied a subsequent promise to the second. The court sustained the demurrer to the fourth plea; and a demurrer to the replication to the second plea having been overruled, issue was joined on that replication.

On the trial, as the bill of exceptions shows, the plaintiff offered in evidence a certified transcript of the judgment on which the action was founded, which transcript was admitted by the court against the defendant's objections; and he then offered in evidence his letters of administration on the estate of Mrs. Eslava, which were granted by the Probate Court of Mobile, dated June 2d, 1881, and in these words: "Whereas George Eberlein applied to the Probate Court holden at the city of Mobile, in and for the county of Mobile, State aforesaid, for special letters of administration of the estate of Celestine Eslava, deceased; and whereas the said application was granted by order of said court, upon performing the requisites required by law, and the said Eberlein having performed the same; now, therefore, be it known, that the said George Eberlein is hereby appointed administrator of the said estate, for the special purpose of conducting a suit at law instituted by said Celestine

Eslava, in the City Court of Montgomery, in the State of Alabama, against one Frederick Wolffe, and was subsequently, in the life-time of said decedent, transferred for value to George Eberlein." The defendant objected to the admission of said letters of administration as evidence, but without stating any special ground of objection; and he reserved an exception to the overruling of his objection.

The plaintiff introduced Jules Eslava as a witness, who testified, that Mrs. Eslava died in December, 1880; that before her death, but after the commencement of this suit, she transferred said judgment to him (witness), to be by him transferred to said George Eberlein; that he did accordingly transfer said judgment to Eberlein before the death of Mrs. Eslava; that during all that period, and long before, witness was the agent of Mrs. Eslava, and defendant had told him, as many as a hundred times, that the debt to Mrs. Eslava was a debt of honor, and he had often promised to pay it;" and he detailed the particulars of a conversation between the defendant and himself, in June, 1877, at which time defendant paid him $20 on account of the judgment, and promised to pay the entire amount in a short time. Another witness for the plaintiff, who was present at this interview, testified to the same effect in substance; while the defendant, testifying in his own behalf, denied that the $20 was paid on account of the judgment, and denied that he had ever promised to pay the judgment after obtaining his discharge in bankruptcy.

At the request of the plaintiff, the court gave the following charges to the jury, to each of which the defendant duly excepted: 1. "If the jury believe, from the evidence, that the plaintiff's intestate recovered a judgment against the defendant in 1868; and that the defendant was discharged in bankruptcy in 1870; and that after such discharge he made an express promise to pay said judgment, then the jury will find for the plaintiff." 2. "When a person who has been discharged from a debt by bankruptcy, and relieved of its payment, makes an express promise to pay such debt, such promise revives the debt, and will entitle the owner thereof to sue on it and recover." 3. "If one man says to another, to whom he is indebted, 'You can rest assured I will pay you next fall, or winter,' such language is, in legal effect, an express promise to pay the debt in the fall or winter." 4. "A promise to pay a debt, from which the debtor has been relieved by bankruptcy, is not required to be in writing." 5. "If the jury believe, from the evidence, that the defendant made an express promise to pay the judgment, after he was discharged from bankruptcy, it makes no difference whether he made any payment on it or not—a payment on it was not necessary to revive the judgment; and

if the jury believe, from the evidence, that such express prom-
ise was made, they will find for the plaintiff."

The several rulings of the court on the pleadings and evi-
dence, and the several charges given, are now assigned as error.

RICE & WILEY, and D. CLOPTON, for appellant.—(1.) The
plaintiff did not sue on her original cause of action, but on the
judgment which had been recovered on it; and the discharge
in bankruptcy being pleaded, the plaintiff was allowed to reply
a subsequent promise. This was a radical departure, and vio-
lative of the rules of pleading. The new promise was the
cause of action, and the old debt was only the consideration on
which that promise was founded.—*DePuy v. Swart,* 3 Wendell,
139; *Moore v. Viele,* 4 Wendell, 420; *Duffie v. Phillips,* 31
Ala. 571. When a debtor has been discharged in bankruptcy,
his after-acquired property is discharged from liability for his
prior debts.—13 U. S. Digest, N. S. 84. Here, the plaintiff,
in order to obtain a judgment, claims that his old judgment is
revived; and in order to obtain satisfaction of any judgment
he may recover, he will be compelled to claim that the subse-
quent promise created a new debt. (2.) The grant of letters
of administration to the plaintiff, as shown by his transcript, is
void on its face. The Probate Court had no power to grant
administration for a single specified purpose, or over a single
litigated claim; or it had equal jurisdiction to grant such special
administration for each separate demand or claim due the in-
testate's estate. (3.) All of the assignments of error are
insisted on.

WATTS & SONS, *contra.*—(1.) The action was properly brought
on the judgment, and the subsequent promise was a good reply
to the plea of bankruptcy.—*Shippey v. Henderson,* 14 Johns.
178; *Dusenbury v. Hoyt,* 53 N. Y. 523; *Maxim v. Morse,* 8
Mass. 127; *Otis v. Gazlin,* 31 Maine, 567; *Moffitt v. Dearing,*
6 Ala. 776; *Evans v. Carey,* 29 Ala. 99; *Bradford v. Spyker,*
32 Ala. 140; Ang. Lim. § 288. (2.) The action was properly
brought in the name of the plaintiff in the judgment, and was
properly revived, notwithstanding the assignment, in the name
of her administrator.—*Smith v. Harrison,* 33 Ala. 706; *Martin
v. Johnson,* 54 Ala. 271. (3.) The plaintiff's letters of admin-
istration, whatever may be their legal effect, are not void.
*Flora v. Mennice,* 12 Ala. 826; *Farrow v. Bragg,* 30 Ala. 261;
Code §§ 2538, 2625; 1 Lomax on Ex'rs, 310, §§ 5, 6.

SOMERVILLE, J.—The proposition is not denied, that
where a debt has been discharged by a decree in a court of
bankruptcy, it may, in a certain sense, be revived, so as to

renew its legal obligation, by an express and unequivocal promise to pay it, made by the debtor subsequent to the date of discharge. The authorities are in perfect harmony as to this princip:e, the only conflict of opinion being as to cases where the debtor makes a promise to pay prior to obtaining his certificate of discharge.—*Evans v. Carey*, 29 Ala. 99 ; Bishop on Contr. § 448 ; *Allen v. Ferguson*, 18 Ala. 1 ; *Knap v. Hoyt*, 57 Iowa, 591 ; s. c., 42 Amer. Rep. 59 ; *Nelson v. Stewart*, 54 Ala. 115. This case is clearly of the former class, the promise to pay being express, and subsequent to the discharge in bankruptcy.

The present action was brought on a *judgment*, in defense of which the appellant, in the court below, set up by way of plea his discharge in bankruptcy. The plaintiff made replication of an express promise by defendant to pay the claim unconditionally. The main point of contention is on the form of the pleadings. It is insisted that the replication of a verbal promise is a *departure* from the original cause of action, which declared on a judgment, and that the action should have been based upon the new promise, and not upon the judgment, which was extinguished by the fact of defendant's discharge in bank-ruptcy.

There are two views of this subject presented in the books, as to the effect of a new promise to pay in its relations to a plea of bankruptcy. The more logical and sounder view, per-haps, is, that the new promise, and not the old debt, is the meritorious cause, or real foundation of the action. The old debt has become extinguished by operation of law, and no longer exists. But the moral obligation to pay still exists, and this, coupled with the antecedent valuable consideration, is sufficient to support a new promise, if clear, distinct, and un-equivocal in its nature. The moral obligation, uniting to the new promise, makes what was designated by Lord Mansfield, in *Truman v. Fenton*, Cowp. 544, "a new undertaking and agreement."—*DePuy v. Swart*, 3 Wend. 135 ; s. c., 20 Amer. Dec. 673 ; *Fraley v. Kelly*, 88 N. C. 227 ; s. c., 43 Amer. Rep. 743.

There is another class of cases, supported perhaps by the weight of authority, which refer the efficacy of such promises exclusively to the principle, that the defendant may renounce the benefit of a law designed for his protection, and that the effect of the new promise is to *waive any discharge* that may be obtained in bankruptcy, at least to an extent commensurate with the promise itself. Mr. Wharton, in his recent work on Contracts, after observing that the validity of promises of this class is no longer placed upon the consideration of moral obli-gation, asserts that "the liability is now based exclusively on

[Wolffe v. Eberlein.]

the right of a party to *waive the protection of a statute* relieving him from indebtedness."—1 Whart. Contr. § 513. Mr. Addison suggests, that "the express promise operates to revive the liability and *take away the exemption*."—1 Add. Contr. (Amer. Ed.) § 13. The same view is adopted by Mr. Parsons and Mr. Bishop in their works on Contracts, and, in fact, with singular unanimity by most if not quite all of the text-writers.—1 Parsons' Contr. 434–435*; Bishop on Contr. §§ 446–448; Leake on Contr. 317; 1 Story on Contr. § 466. The past decisions of this court seem to have proceeded upon this theory of the law, and the prevailing system of pleading, by which the plaintiff is accustomed to declare upon the original promise, and to introduce the new promise by way of replication to the plea of bankruptcy, is manifestly an outgrowth of it.—*Dearing v. Moffitt*, 6 Ala. 776; *Branch Bank v. Boykin*, 9 Ala. 320; *Evans v. Carey*, 29 Ala. 99, 107.

It is not required that we should decide which of these two theories is correct. The better view, in our judgment, is that suggested by Mr. Parsons, that the plaintiff may, at his election, bring suit either upon the new promise, and declare upon it, in the first instance, as the foundation of his action, thus himself assuming the *onus* of proving the discharge in bankruptcy, without which the new promise would be unavailing; or he may sue upon the old or original promise, and, when the plea of bankruptcy is interposed as a defense, may set up the new promise in his replication to the plea, as in analogous cases involving the defense of infancy and the statute of limitations. 1 Parsons' Contr. 434–5* (6th Ed.), note (*v*), and cases cited.

In *DePuy v. Swart* (3 Wend. 135; s. c., 20 Amer. Dec. 673, 676), while it was held that the liability of the bankrupt was referable only to the new contract, it was said to be well settled, that the plaintiff could declare on the original cause of action. "The inconsistency of making the new promise the basis of the action," it was observed by MARCY, J., "and at the same time allowing the plaintiff to declare upon the antecedent debt, which has been discharged, or the remedy upon it barred, has been often presented in the courts of England and of this country; and although it has been sanctioned, it has been looked upon as a deviation from the general rule requiring a plaintiff to state in his declaration the agreement or whole cause of action whereon his suit is brought." In *Shippey v. Henderson*, 14 Johns. (N. Y.) 178, it was held proper for the plaintiff to sue the bankrupt on the original demand, and to reply the new promise in avoidance of the discharge set up in the plea; and such replication was decided not to be a departure from the declaration. This ruling was followed in many subsequent cases in New York, including *Dusenbury v. Hoyt* (53

N. Y. 521), decided as late as 1873, in which the court said: "We are of opinion that this rule of pleading, so well settled, and so long established, should be ·adhered to. The *original debt* may still be considered the cause of action *for the purpose of the remedy*."—*Fitzgerald v. Alexander*, 19 Wend. 402; *Wait v. Morris*, 3 *Ib*. 394. In the case of *Field's Estate* (2 Rawle Penn. 351; s. c., 21 Amer. Dec. 454), it was held that the new promise was substantially the meritorious cause of action; but it was said that it *might be treated otherwise in the pleadings*, by declaring on the old promise, although this was admitted by GIBSON, C. J., who rendered the opinion in the case, to be *an anomaly* in pleading. There are a large number of cases supporting the same view.—See Bishop on Contr., § 448, and cases cited in NOTE 3.

We have been cited to no case which holds that this long-established rule of pleading is to be abandoned, where the action is one of debt brought upon a *judgment* of a court of record. The case of *Maxim v. Morse*, 8 Mass. 127, was brought on a judgment, and the plaintiff's replication of a verbal promise by the bankrupt to pay the debt was held to be no departure from the original cause of ·action, being declared to be such more in appearance than reality. The case of *Otis v. Gazlin*, 31 Me. 566, was a similar suit, in which the plaintiff successfully declared upon the judgment, instead of the new promise, and, although bankruptcy was pleaded, the form of pleading was held to be correct.

A strong analogy is found in cases involving the plea of the statute of limitations. Bankruptcy, it is true, extinguishes the debt as a legal subsisting demand, while the operation of the statute is only to destroy the remedy. Yet it is settled in the one class of cases, as well as in the other, that the new promise is the true and real foundation of the cause of action, and, strictly speaking, upon it alone can a recovery be had. Such is the settled doctrine of this court; and since the case of *Bell v. Morrison*, 1 Peters, 351, decided by Judge STORY more than fifty years ago, it may be regarded as the recognized doctrine in this country.—*Bradford v. Spyker*, 32 Ala. 134; Angell on Lim. (6th Ed.) § 212. Notwithstanding this fact, the rules of pleading permit the plaintiff to declare upon the original debt, and, when the statute of limitations is pleaded, to reply the new promise.—Angell on Lim. § 288. In *Bradford v. Spyker*, 32 Ala. 148, this feature of pleading was said to be an anomaly in the law; but the court approved it, as sanctioned by long practice rather than in principle, quoting the language of BEST, C. J. in *Upton v. Else*, 12 Moore, 303 (22 Eng. Com. Law, 451), where he said: "Probably, the new promise ought in strictness to be declared on specially;

[Wolffe v. Eberlein.]

but the *practice is inveterate the other way*, and we cannot get over it."

The practice adopted in the present action of declaring on the original debt, where the bankruptcy of the defendant is pleaded, has prevailed for a long time in this State. Though an anomaly in the law, we can see no good to result from abolishing it by judicial decision, but rather inconvenience and confusion. Admitting it to be wrong in principle, we feel justified in permitting it to stand, if for no other reason, because it is supported, with few exceptions, by the antiquity of uninterrupted practice, not only in this State, but generally in the courts of England and America.

2. The objection to the party plaintiff, in whose name the present suit was instituted or revived, is not well taken. A judgment is not "*a contract*, express or implied, for the payment of money," within the meaning of section 2890 of the present Code, such as entitles the assignee to bring an action thereon in his own name.—*Johnson v. Martin*, 54 Ala. 271. The assignment, moreover, was made to the plaintiff, Eberlein, individually, after the commencement of the action, having been made by Mrs. Eslava, the original plaintiff in the judgment, during her life-time. The legal title remained in the latter, with only an equity vested in the assignee. After the death of Mrs. Eslava, this title passed to her administrator in trust for the beneficiary, and the suit was properly revived in his name.

3. In *Evans v. Carey*, 29 Ala. 99, it was decided that an express promise by a bankrupt, to pay a particular debt to a creditor, would "avoid the effect of such discharge, as well when the words constituting such promise are spoken to a third person, as when they are spoken to the creditor personally, or to his agent." On this principle, the promise made to the agent of the assignor of the present judgment must be held to enure to the benefit of the assignee. We follow this authority, although it can probably be justified solely on the theory, that the effect of the new promise is only, using the language of Mr. Parsons, "to do away the obstruction otherwise interposed by the bankruptcy and discharge."—1 Parsons Contr. 434; *Otis v. Gazlin*, 31 Me. 567. It harmonizes with the practice, however, of declaring upon the original debt in such cases, and of introducing the new promise by way of replication to the plea of bankruptcy.

4. It is contended that no recovery can be had in the present action, because the plaintiff was never legally appointed administrator of Mrs. Eslava's estate, an issue which was properly presented under the plea of *ne unques administrator*. The order of the Probate Court of Mobile, showing the

[Wolffe v. Eberlein.]

appointment, recites that "George Eberlein is hereby appointed the legal administrator of the said estate [of Celestine Eslava], *for the special purpose of conducting a suit at law* instituted by said Celestine Eslava in the City Court of Montgomery, in the State of Alabama, against one Frederick Wolffe," proceeding further to describe the present action. It is insisted that these letters of administration are absolutely void. The authority of the Probate Court to appoint the plaintiff administrator is not denied. It is not shown that there is no vacancy in the administration, and, in the absence of evidence to the contrary, such vacancy must be presumed, in view of the fact that Courts of Probate in this State are courts of "*general jurisdiction* for the granting of letters testamentary and of administration."—Const. 1875, Art. VII. § 9; *Burke v. Mutch,* 66 Ala. 568; *Allen v. Kellam,* 69 Ala. 442; *Gray's Adm'rs v. Cruise,* 36 Ala. 559. Conceding that Courts of Probate have no power to limit the duties of the administrator to the narrow sphere of conducting a single suit, we are unable to perceive upon what principle this would vitiate the appointment itself. The power to appoint is unquestionable, and so likewise is the judicial act of appointment in exercise of the power. The objection, if valid, goes only to the effort to put a limitation upon the authority of the administrator, which would present the case only of the exercise of a lawful power in an unlawful or irregular manner. This would, *at most,* render the judgment *voidable* and not void, and such irregularity could be presented only in a direct proceeding, and not on collateral assailment.—*Burke v. Mutch,* 66 Ala. 568, and cases there cited. Perhaps the sounder view would be, that the attempt to limit would be a mere nullity, in as much as the law fixes the duties of the administrator after appointment, and not the probate judge in violation of the law. The present case does not seem to be affected by sections 2358 and 2625 of the Code, relating to special administrators and administrators *ad litem.*

There are some other exceptions in the record, based upon the rulings of the court on the evidence. These we have examined, and find nothing of merit in them.

The judgment of the court below is, in our opinion, free from error, and it is accordingly affirmed.