# Griel & Bro. *v.* Solomon.

*Action on Common Counts, against Discharged Bankrupt.*

1. *Discharge in bankruptcy; subsequent promise between adjudication and discharge.*—A discharge in bankruptcy relates back to the adjudication of the fact of bankruptcy; and a subsequent promise to pay, made between the adjudication and the discharge, is sufficient to revive the debt.

2. *Same; sufficiency of subsequent promise.*—A subsequent promise to pay a debt discharged in bankruptcy must be clear, distinct, and unequivocal; and it must be express, as distinguished from an implied promise, such as a partial payment.

3. *Same; conditional promise.*—Such a promise may be either absolute or conditional; but, when dependent on a condition or contingency, the plaintiff must aver and prove that the condition has been performed, or that the contingency has happened.

4. *Same; promise to pay when able.*—A promise to pay so soon as the bankrupt is able is a valid condition, and is not void for uncertainty; and being sufficiently averred and proved, it is sufficient to remove the bar.

5. *Evidence of implied promise before discharge or adjudication of bankruptcy.*—In an action on the original deb,t a subsequent promise being replied to a plea setting up the discharge in bankruptcy, it is not competent for the plaintiff to prove that, at the time the debt was contracted, he knew the defendant's embarrassed condition, and was assured by him that, "no matter what might happen to him, he would never let plaintiff lose anything by him."

6. *Proving claim against bankrupt's estate; impeaching witness as to irrelevant matter.*—In such action, the fact that plaintiff proved his claim against the bankrupt's estate, is irrelevant and inadmissible as evidence for the defendant, unless in connection with proof of the payment of a dividend on the claim under the plea of payment; and being immaterial and irrelevant, no predicate can be laid for impeaching the witness' denial of the fact by contradicting him.

7. *Misnomer as to middle name or initial.*—Although the insertion of a wrong middle name, or the initial letter of a middle name, may not be good matter for a plea in abatement; yet, since the name may be material in a subsequent action on the judgment, the plaintiff should be allowed to amend by correcting the mistake.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by N. Griel & Brother, suing as partners, against "J. F. Solomon," as the defendant's name was written in the summons and complaint; and was commenced on the 26th January, 1884. The complaint contained only the common counts, each of which alleged an indebtedness accruing "on, to-wit, the 22d day of December, 1876." The defendant pleaded in abatement, that his name

was Jacob *Schley* Solomon, and that he was never known or called J. *F.* Solomon; which plea was struck from the files, on motion of the plaintiffs. The plaintiffs then asked leave to amend the complaint, by striking out the *F.* in the defendant's name as alleged; and they excepted to the overruling and refusal of their motion. The defendant then pleaded, in short by consent, *non assumpsit*, payment, discharge in bankruptcy on the 2d February, 1878, and the statutes of limitations of three and six years. The plaintiffs took issue on the first and second pleas; to the plea of bankruptcy replied a subsequent promise, which was alleged to have been made "since the discharge in bankruptcy," and a subsequent promise made "after the filing of the petition in bankruptcy;" and to the pleas of the statutes of limitations replied a partial payment and the defendant's absence from the State. Issue was joined on these several replications.

The account sued on, the correctness of which was admitted by the defendant, showed a balance of $1,421.65 due from him to the plaintiffs on the 22d December, 1876; and the plaintiffs admitted a partial payment thereon, made on the 15th October, 1878, of $335.49. The defendant's discharge in bankruptcy, which was granted on the 2d February, 1878, was admitted; but the record does not show when he was adjudicated a bankrupt, nor when the petition in bankruptcy was filed. The payment of the $335.40, on the 15th October, 1878, was made by one F. Wolffe, as the agent or friend of the defendant, who testified, as a witness for the defendant, that it was paid and received in full satisfaction of plaintiffs' debt, and a receipt in full given by plaintiffs, which he afterwards delivered to the defendant, who also testified to its contents and loss. The plaintiffs, admitting this payment by Wolffe, denied that they received it, or ever agreed to receive it, in full payment of their claim against the defendant. The defendant claimed, also, a credit for $102.35, paid to L. C. Smith, as attorney for plaintiffs and other creditors of the defendant, whose claims had been filed in a chancery cause, the object of which was to foreclose a deed of assignment executed by said defendant in December, 1876; and for this purpose offered in evidence a transcript of the record of said chancery cause, containing, 1st, the original bill filed by Dunham, Buckley & Co., on behalf of themselves and all other creditors who might come in and prove their debts, asking the removal of the trustee appointed in the deed of assignment, the appointment of a receiver in his stead, and the foreclosure of the assignment; 2d, the petition of numerous creditors, includ-

ing plaintiffs, all of whom were represented by F. Wolffe as agent, asking that the receiver (A. R. Bell) might not be allowed to interfere with the possession and management of the assignee; 3d, the report of said receiver to the court, showing payments made by him on the claims filed; and, 4th, the order approving and confirming the report. The receiver's report showed the several sums paid to the respective creditors, or their attorneys; and among the claims paid to L. C. Smith as attorney, June 14th, 1878, was "N. Griel & Brother, $102.35." Smith testified that all the claims represented by him were placed in his hands by said Wolffe, to whom he also paid over the money collected; while said Wolffe testified, on cross-examination, that the money had not been paid to him. The plaintiffs objected to the admission of this transcript as evidence, and to each part thereof separately, and duly excepted to the overruling of their objections.

One of the plaintiffs, while testifying as a witness, was asked on cross-examination, "if he had not proved up this claim against the defendant's estate in bankruptcy; to which he answered, that he had not." The plaintiffs objected to this question and answer, and reserved exceptions to the overruling of their objections. The defendant afterwards produced the proof of said debt as a claim against the bankrupt's estate, and the court admitted it as evidence, against the objection and exception of the plaintiffs. Each of the plaintiffs, testifying as a witness for themselves, stated that the defendant had made repeated promises to pay their debt, "when he was able," or "when he got on his feet again;" some of which promises were made after his adjudication as a bankrupt, but before he had obtained his discharge, and others after his discharge. The court excluded the former promises as evidence, on objection by the defendant, and the plaintiffs excepted. The plaintiffs also offered to prove by one of themselves, testifying as a witness, "that at the time the account sued on was contracted he knew that the defendant was in a shaky condition, and the matter was discussed between him and the defendant, and defendant told him that, no matter what might happen to him (defendant), he never would let plaintiffs lose anything by him." The court excluded this evidence, on objection by the defendant, and plaintiffs excepted. "The evidence for plaintiffs tended to show, also, that they turned over their said claim to said Wolffe, soon after defendant had been declared a bankrupt, and let him run it as he saw proper." The plaintiffs introduced, also, evidence showing the defendant's absence from Alabama for several

years, and that he was engaged in carrying on business as a warehouse-man at Meridian, Mississippi; and this evidence seems to have been admitted without objection.

This being "substantially all the evidence," the court charged the jury, among other things, as follows: "That the evidence and the admissions of the parties had reduced the issues in the cause to a single one—namely, whether the defendant, after his discharge in bankruptcy, had made an absolute, unconditional promise to pay their debt; *that the promise must have been an absolute and unconditional promise.*" The plaintiffs excepted to the italicized portion of this charge, and also to the following charges, which were given on request of the defendant:

"1. Before the plaintiffs can recover in this suit, the burden is on them to show, to the satisfaction of the jury, that the defendant, after his discharge in bankruptcy, made an absolute and unconditional promise to pay the debt sued on.

"2. If the jury believe, from the evidence, that the defendant promised to pay the plaintiffs' debt here sued on, in the event he ever got able to do so, this would not, without more, constitute such an unconditional promise as would entitle plaintiffs to recover in this action.

"3. Even if the jury should believe, from the evidence, that the defendant did pay, or cause to be paid to the plaintiffs, $335.40 on account of the debt sued on, to-wit, on the 15th October, 1878, after he had obtained his discharge in bankruptcy; yet such payment, without more, would not avoid the bar which his discharge in bankruptcy operated against the debt; and upon this state of facts, without more, plaintiffs would not be entitled to recover in this action.

"4. If the jury believe, from the evidence, that the only kind of promise made by the defendant, after his discharge in bankruptcy, was to pay if he ever became able, or upon any such condition as that; then, under the issues in this case, the jury ought to find for the defendant.

"5. The burden is on the plaintiffs to show that the defendant, after his discharge in bankruptcy, made an express and unconditional promise to pay the indebtedness here sued on; and if the jury are not satisfied that such promise was made by him after his discharge in bankruptcy, they should find for the defendant."

The several charges given, and the rulings on the pleadings and evidence to which exceptions were reserved, are now assigned as error.

[Griel & Bro. v. Solomon.]

TROY, TOMPKINS & LONDON, for the appellants, insisted on each of the assignments of error, and cited the following cases : *Roberts v. Morgan,* 2 Esp. 736; *Brix v. Braham,* 1 Bing. 281 ; *Kirkpatrick v. Tattersall,* 13 Mees. & W. 766 ; *Corliss v. Shepherd,* 28 Maine, 550; *Otis v. Gazelin,* 31 Maine, 567; *Fraley v. Kelly,* 67 N. C. 78; *Hornthal v. Mc-Rae, Ib.* 21; *Stillwell v. Cooper,* 4 Denio, 225 ; *Knapp v. Hoyt,* 42 Amer. Rep. 59 ; *Evans v. Carey,* 29 Ala. 99; *Dearing v. Moffitt,* 6 Ala. 776 ; *Norton v. Shepard,* 48 Conn. 141.

RICE & WILEY, *contra.*—The court below instructed the jury, "that the evidence and the admissions of the parties had reduced the issues to a single one;" and no exception was reserved to this part of the charge. This court, then, can not go beyond the admissions, nor inquire into their sufficiency.— *Price v. Br. Bank,* 17 Ala. 378 ; *Gibson v. Land,* 27 Ala. 117; *Chapman v. Holding,* 54 Ala. 61. As to the single issue thus presented for revision—the sufficiency of a subsequent promise to revive a debt discharged by bankruptcy—the appellee relies on *Dearing v. Moffitt,* 6 Ala 776 ; and *Wolffe v. Eberlein,* 74 Ala. 104, with cases there cited.

SOMERVILLE, J.—The suit is one on the common counts, brought by the plaintiffs against the defendant, Solomon, who is a discharged bankrupt, and pleads his discharge as a defense to the action. The main points of controversy arise on the alleged promises of the defendant to pay the debt, after the adjudication of bankruptcy, and before the discharge, and the character of the promise required to revive a discharged debt.

1. It was proposed by the plaintiffs to prove, that the defendant promised to pay the debt sued on, during the time elapsing *between* the date of his *adjudication* as a bankrupt and the date of his *discharge.* The plaintiffs' replication alleges a new promise, made since the filing of the bankrupt's petition. On objection taken to this evidence by the defendant, it was excluded from admission to the jury. The court, in our judgment, erred in this ruling. The *adjudication* of a debtor's bankruptcy is the pivotal period of all bankrupt proceedings, from which flow all of his disabilities, as well as the attendant rights of creditors conferred by the law,—being, as it is, a judicial ascertainment of the fact that an act of bankruptcy was committed at some antecedent period, which is fixed, by relation, at the commencement of the bankrupt proceedings, which is the filing of the petition. The bankrupt is regarded as *civiliter mortuus,* as to all previous dischargeable debts and liabilities,

from the date of such adjudication, so long as it continues unrevoked by the court of bankruptcy in which the proceedings originated.— *Gayle v. Randall*, 71 Ala. 469. Hence, it is now settled by the great weight of authority, with comparatively few decisions to the contrary, that an express promise to pay a debt, made by a bankrupt *before his discharge*, but *after his adjudication*, is just as effective to revive the debt against him, and to waive his expected discharge, as would a promise made after obtaining his certificate of discharge. Mr. Bump says : " There is no distinction between a promise made after the *filing of the petition*, but before the certificate, and one made after it. Both are equally binding, the only consideration being the old debt."—Bump on Bankruptcy (8th ed.), p. 746. Under former bankrupt laws, a distinction was taken between promises made after the adjudication of bankruptcy, and those made after the filing of the petition ; and it was held that a new promise, to overcome the effect of a discharge, must appear to have been made after the party was decreed to be a bankrupt— or, in other words, after the adjudication.—Hilliard on Bankruptcy & Insolvency, p. 262, § 46. Under the law of 1867, there is no difference, practically, between the date of the *fiat*, or adjudication, and the date of the petition ; because the first, as we have before said, extended by relation back to the latter date, as does also the discharge when duly obtained. In support of the view contended for by appellants' counsel, and announced by Mr. Bump in the extract above quoted, we need only refer to the following authorities : *Knapp v. Hoyt*, 57 Iowa, 591 ; s. c., 42 Amer. Rep. 59 ; *Fraley v. Kelly*, 67 N. C. 78 ; *Hornthal v. McRae*, 67 N. C. 21 ; *Corliss v. Shepherd*, 28 Miss. 550 ; *Otis v. Gazelin*, 31 Me. 567 ; *Roberts v. Morgan*, 2 Esp. 736, and other authorities on the brief of appellants' counsel.

2. We consider next the nature of the new promise, which will revive a debt discharged by bankruptcy, or, what is the same in legal effect, will operate to waive the discharge of the bankrupt. In *Wolffe v. Eberlein*, 74 Ala. 99 (s. c., 49 Amer. Rep. 809), we discussed at length the effect of such promise in its relation to the plea of bankruptcy, and the rules of pleading on the subject, to which we need add nothing further. Speaking of the discharged debt, we there said : " The old debt has become extinguished by operation of law, and no longer exists. But the moral obligation to pay still exists, and this, coupled with the antecedent valuable consideration, is sufficient to support a new promise, if clear, distinct, and unequivocal in its nature." An implied promise is insufficient. It must be express,

[Griel & Bro. v. Solomon.]

thus differing from the promise required at common law to take a debt out of the operation of the statute of limitations. It must be clear, distinct, and unequivocal, such as to indicate on the part of the debtor " a clear intention to bind himself to the payment of the debt." So, partial payments on a discharged debt are insufficient evidence of a new promise to pay the residue.—*Allen v. Ferguson,* 18 Wall. 1 ; *Dearing v. Moffitt,* 6 Ala. 776 ; *Evans v. Carey,* 29 Ala. 99 ; Bump on Bankruptcy (8th ed.), 744 ; Hilliard on Bankruptcy, 265, § 53.

3. Such a promise may be either absolute, or it may be conditional. But, if dependent on a condition or contingency, this fact must be stated by the pleader ; and it must be averred and proved that the condition has been performed, or the contingency has happened.—*Branch Bank v. Boykin,* 9 Ala. 320 ; *Dearing v. Moffitt, supra ; Allen v. Ferguson, supra ; Maxim v. Morse,* 8 Mass. 127.

4. A promise to pay so soon as the bankrupt is able, is a valid condition, not void for uncertainty, and is so held generally by the authorities.— *Taylor v. Sneed,* 4 Ala. 352 ; *Sherman v. Hobart,* 26 Vt. 60 ; Bump on Bank. (8th ed.), 745–746, and cases cited ; *Dearing v. Moffitt,* 6 Ala. 776, and cases cited. But, to be available, the promise must be averred in proper form, and satisfactory proof adduced of the defendant's ability to pay—that is, of the fact that he has sufficient property or means to pay.—*Mason v. Hughart,* 9 B. Monroe, 480 ; Hilliard on Bankruptcy, 266, § 55. The plaintiffs failed to aver, in their replication, any but an unconditional promise to pay.

It is easy to test the correctness of the court's rulings on the points covered by the foregoing principles, without examination of the various charges in detail.

5. The court did not err in excluding the statement made by the witness Jacob Griel, one of the plaintiffs in the action, that, at the time the account sued on was contracted, the plaintiffs knew that the defendant was " in a shaky condition ; and that the matter was discussed between him and the defendant, and that defendant said to him that it mattered not what might happen to him (defendant), *he would never let the plaintiffs lose anything by him.*" The evidence may tend to show that the defendant regarded the debt sued on as an honorary debt ; but it could not be more relevant than reiterated verbal promises to pay, and such promises, made before the filing of the petition, would be inadmissible. The case of *Reed v. Frederick,* 8 Gray, 230, seems to be an authority directly in point, against the

admission of the evidence offered.—Hilliard on Bank. 266, § 54.

6. The fact that the plaintiffs proved the debt against the estate of the bankrupt, was immaterial, and irrelevant to any issue in the present suit, unless some payment on the claim was made by way of dividend from such estate. And being immaterial, no predicate could be laid by the answer of the witness touching it, for impeaching him by contradiction.

7. We can see no reason why the plaintiffs' motion was refused, asking permission to amend his complaint, by striking out the middle initial of the defendant's name. While a variance, as to a middle name, may not be sufficiently material to sustain a plea of abatement for misnomer, under our rulings ; yet, in the event of a subsequent suit on the judgment, a difference in the middle name might enhance the difficulty of proving the identity of the party to the judgment with the one alleged to owe the judgment debt.

The objection taken to the admission in evidence of the papers connected with the suit of Dunham against Solomon, in the Circuit Court of the United States, was properly overruled. That suit was a general creditors' bill, and all persons became parties to it who appeared and claimed their *pro rata* share of the dividends derived from the assets of the defendant. Taken in connection with the other evidence found in the record, these papers and exhibits tended to show a payment of a dividend, distributed in that suit, something over one hundred dollars on the plaintiffs' claim, on June 14th, 1878, which was admissible under the plea of payment interposed by the defendant. The evidence tends to prove that the attorney who collected this sum was employed by one Wolffe, and that the latter may have been acting in the matter as the agent of the plaintiffs. It may be, as contended, that the amount of three hundred and fifty-five 40-100 dollars, paid by Wolffe to plaintiffs in October, 1878, included this other sum, as the evidence tends to show; but the truth of this was a matter for the determination of the jury.

The judgment is reversed, and the cause remanded.