FARMERS AND MERCHANTS BANK OF VAN-
DALIA, Respondent, v. RICHARDS, Appellant.

St. Louis Court of Appeals, May 8, 1906.

1. **BILLS AND NOTES: Interest: Oral Agreement to Pay Eight Per Cent.** Notwithstanding the provision of section 3706, Revised Statutes 1899, an oral promise to pay a note bearing interest at the rate of eight per cent was binding on the promisor.

2. **BANKRUPTCY: Discharge from Debt: New Promise: Consideration.** The discharge of a debtor in bankruptcy releases the debtor of the legal obligation to pay, but the moral obligation to pay remains and furnishes a sufficient consideration in law for a new promise to pay, and he is bound by a new promise made unconditionally to pay without other consideration. In this case the evidence is examined and held sufficient to show an unconditional new promise.

3. **PRACTICE: Pleading: Discharge in Bankruptcy.** In an action on a new promise to pay a note from which the defendant had been discharged in bankruptcy, a failure of the petition to allege the discharge made it defective, but the omission was supplied by such allegation in the answer.

4. ———: **Browbeating Witness.** Great liberality is usually allowed in cross examination of an adverse party, where his evidence contradicts the evidence offered by the opposite side, and in this case it is held the privilege was not abused.

5: ———: **Pleading: Variance.** In an action, on a new promise to pay a note, brought against the maker who had been discharged in bankruptcy, where the petition alleged the promise was made for a *valuable* consideration, proof that it was made for a *good* consideration, to wit: the moral obligation to pay the note, was not a variance which would bar recovery, where the defendant did not pursue the statutory method provided for taking advantage of a surprise in such cases.

Appeal from Audrain Circuit Court.—*Hon. James D. Barnett,* Judge.

AFFIRMED.

*Geo. Robertson* and *John Gatson* for appellant.

There could be no renewal of a note bearing eight per cent interest by a new promise not in writing. R. S. 1899, secs. 3705, 3706. The evidence offered on the part of the plaintiff in an effort to show a new promise was insufficient to constitute a new promise to pay the note. It included a promise to pay interest which was necessarily eight per cent. "An express, positive and unconditional promise is generally held to be necessary." 16 Am. & Eng. Ency. of Law (2 Ed.), 790 and authorities cited under note 2. "A new promise to revive a discharged debt must, however, be clear, express, distinct and unequivocal and without qualification or condition." 5 Cyc., 408 and authorities cited under note 88. In Griel v. Solomon, 82 Ala. 85; Shockey v. Mills, 71 Ind. 288; Sedgwick v. Gerding, 55 Ga. 264; Meech v. Lamon, 103 Ind. 515; Elwell v. Cumner, 136 Mass. 102.

*P. H. Cullen* and *J. C. Barrow* for respondent.

(1) A promise made after discharge in bankruptcy, to pay a debt provable in bankruptcy, and from the liability to pay which the defendant was discharged, need not be in writing. Thornton v. Nichols, 11 Am. Rep. 304. Reith v. Lullman, 11 Mo. App. 254; Wislezenus v. O'Fallon, 91 Mo. 184; Swan v. Lullman, 12 Mo. App. 534; Mutual Reserve v. Beatty (C. C. A.), 93 Fed. 747; Worthington v. DeBardlekin, 33 Ark. 651; Ross v. Jordan, 62 Ga. 298; Way v. Sperry, 60 Mass. (Cush.) 238, 52 Am. Dec. 779; Craig v. Seitz, 63 Mich. 727, 30 N. W. 347; Henley v. Lanier, 75 N. C. 172; Kull v. Farmer, 78 N. C. 339; Lanier v. Tolleson, 20 S. C. 57; Calloway v. Baldwin, 1 White and W. Civ. Cas. Ct. App. 592; Bank v. Flint, 17 Vt. 508, 44 Am. Dec. 351; Pratt v. Russell, 61 Mass. (7 Cush.) 462. (2) The promise made by the bankrupt and proved in this case is sufficient under the rule established by all well considered cases. Authori-

ties, Supra. Katz v. Moessinger, 110 Ill. 372; St. John v. Stephenson, 90 Ill. 82; Cheney v. Barge, 26 Ill. App. 182.

STATEMENT.— On February 17, 1900, defendant executed and delivered to plaintiff his promissory note for three hunded and twenty-five dollars, bearing interest from date at the rate of eight per cent per annum. The note, though overdue, has not been paid. After executing the note the defendant was adjudged a bankrupt and on February 28, 1901, received his discharge in bankruptcy. The count of the petition on which the case was tried (the second one) alleged, in substance, that after the adjudication in bankruptcy, the defendant, "for a valuable consideration, by a new promise then and there made, promised and agreed "to pay the note in full; that as to whether or not defendant had been discharged as a bankrupt, plaintiff had no knowledge or information. The substance of the answer to this count was a plea of discharge in bankruptcy and a denial of the alleged new promise. On the issues thus made the jury returned a verdict for plaintiff for four hundred and sixty-three dollars and sixty-five cents. Unsuccessful motions for new trial and in arrest of judgment were filed and defendant appealed.

The plaintiff's evidence tends to show that on January 25, 1903, defendant went into plaintiff bank for the purpose of cashing a draft, and the cashier then and there called his attention to the three hundred and twenty-five dollars note and asked him to renew it. Defendant said, "No, I will pay it." The cashier testified as follows: "I offered him a renewal note dividing it, making half of it payable in six months and half in twelve months. He says, 'No, I will pay it.' I would judge we were engaged in conversation some thirty minutes. He continued to say he would pay it. His reason for not signing a new note was that he would have to

give new notes to other parties. I called his particular attention to this note sued on, or three hundred and twenty-five dollar note. The note which is dated February 17, 1900, is the note that he said he would pay." On cross-examination witness testified: "I asked him what he intended to do with the note. He said he would pay it. I asked him what he could do for us on that note of three hundred and twenty-five dollars. He says, 'I am going to pay it.' I asked him to make me a couple of notes dividing it half and half, one six months and one twelve months. He says, 'No, I will pay it.' I told him, all right. I considered at the time he would pay it from six to twelve months. He didn't give me any exact time about paying it. I had a conversation with him about two months afterwards. I talked to him about the note and he said he was going to pay it. I asked him if he didn't consider it an accommodation to let him have the money. I spoke to him about renewing the note and he said he would pay it. He came right out and said, 'I will.' "

W. L. Wright, a witness for plaintiff, testified as follows: "I heard Mr. Richards say, 'Fred, I will pay the note but I cannot renew it now. If I was to renew this note I would have to give other parties a new note, and I couldn't do that.' They were engaged in conversation some little time; it was less than an hour."

Both in his examination in chief and on cross-examination, defendant distinctly and emphatically denied that he promised to pay the note or any part of it at any time after his discharge in bankruptcy.

BLAND, P. J. (after stating the facts) —1. By the discharge in bankruptcy the note was not paid, but the defendant's liability thereon was discharged, and the action is not on the note but on the new promise, the discharged debt being the consideration therefor. [Fleming v. Lullman, 11 Mo. App. 104.] Section 3706, R. S. 1899,

provides: "Parties may agree, in writing, for the payment of interest, not exceeding eight per cent per annum, on money due or to become due upon any contract." The preceding section provides that where no rate of interest is agreed to be paid, six per cent shall be the legal rate. By reason of section 3706, supra, the defendant contends that an oral promise to pay a note bearing eight per cent interest per annum is unenforceable. This contention seems to us to be more subtle than sound. The note itself is the evidence of the debt, and furnished the consideration for the new promise and was, by the oral promise, incorporated into the contract to pay, and became, in a sense, a part of it; and while the note did not furnish the plaintiff's cause of action, it furnished written evidence of the sum agreed to be paid by the new promise.

2. The discharge of the debtor in bankruptcy does not satisfy the debt, but merely releases the debtor of his legal obligation to pay. The moral obligation to pay remains, and furnishes a sufficient consideration in law for the new promise to pay. This promise, to be enforceable, "must be an express, positive and unconditional promise." [16 Am. & Eng. Ency. of Law (2 Ed.) p. 790, Griel & Bro. v. Solomon, 82 Ala. 85; Snockey et al. v. Mills et al., 71 Ind. 288; Katz v. Moessinger, 110 Ill. 372; St. John v. Stephenson, 90 Ill. 82.] And the defendant makes the point that the evidence is insufficient to show an express, positive and unconditional promise on the part of the defendant to pay the note, and for this reason the court should have granted its instruction in the nature of a demurrer to the evidence. A promise in these words. "I do not intend you shall lose it. I will make it all right," made by a bankrupt to his creditor, was held not a sufficient new promise to revive the debt. [Meech v. Lamon, 103 Ind. 515.]

In Elwell v. Cummer, 136 Mass, 102, a debtor while in bankruptcy wrote to his creditor as follows: "I shall

pay you all I owe you with interest, but at this time I cannot. As soon as I can, I shall pay you. When I can, I shall pay all my debts, and yours shall be the second that I pay. To pay you now, I cannot spare a dollar from my business, but if you will wait, I think I can pay you some time." Held, that these statements amounted only to a conditional promise to pay when the debtor should be able; and, in the absence of evidence of his ability to pay, would not, under the Pub. Sts. c. 78, sec. 3, deprive the debtor of relying upon a discharge in bankruptcy, in bar of the recovery of a judgment upon the debt. A debtor while in bankruptcy wrote to his creditor as follows: "My lawyer says I must not pay any one a dollar until I get through bankruptcy, then I can pay if I want to do so. I shall pay you all and the interest, but you will have to give me time. This is all I can say now." Held, that this was not such evidence of a new or continuing contract, within the Pub. Sts. c. 78, sec. 3, as would deprive the debtor of relying upon a discharge in bankruptcy, in bar of the recovery of a judgment upon the debt.

In Bolton v. King, 105 Pa. St. 78, a statement in the following terms: "We owe her the money; will pay her some day; can't say when," was held, under the circumstances of the case, to be a sufficient new promise to support a suit for a debt which had been extinguished by proceedings in bankruptcy.

In Hubbard, Admr., v. Farrell, 87 Ind. 215, the bankrupt sent this message to his creditor: "Tell him I intended to pay him," which message the creditor received. The court held this was sufficient evidence of a new promise to support a verdict for the plaintiff.

In Reith v. Lullman, 11 Mo. App. 254, it was held that where the discharged debtor in bankruptcy, upon presentment of a claim by the creditor's collector, said: "Tell Harry (the creditor) to come down and I'll pay

him," was a promise sufficient to support the verdict for plaintiff.

The evidence for plaintiff tends to show that defendant, referring to the note, said to the cashier of the plaintiff, not once, but repeatedly, "I will pay it." These words convey the idea of an express and unconditional promise, and we think furnished ample evidence to warrant the court in submitting to the jury to find whether or not there was an express promise to pay the note.

3. We do not think, as insisted by the defendant, that the second count of the petition fails to state any cause of action. It alleges the execution of the three hundred and twenty-five dollars note, that it had not been paid, that defendant had been adjudged a bankrupt, but whether or not he had been discharged plaintiff had no knowledge or belief, and alleges the new promise to pay the note. If the petition was in any respect materially defective, it was in failing to allege the discharge in bankruptcy. This omission was supplied by the answer, which affirmatively alleges that defendant had received his discharge.

4. Severe criticism and adverse comment is made of the court's action in permitting what is characterized by defendant's counsel, as "a browbeating cross-examination" of the defendant. Great liberality should be allowed in the cross-examination of an adverse party, where, as in this case, his evidence is a flat and unequivocal contradiction of the evidence of the opposite party in respect to the principal issues in the case. His conscience may be searched as with a lighted candle, and so long as his cross-examination is confined to the purpose of eliciting the truth relative to the issues in the case, a free hand should be given, provided that under no circumstances, should a trial court permit an attorney to intimidate a witness or confuse him by a too rapid cross-examination. There is nothing in the record indicating that defendant was intimidated in the least or

thrown off his guard by a rapid fire of questions, for he stuck well to his text, that he did not promise to pay the note after his discharge in bankruptcy.

5. The petition alleged that the promise to pay the note was for a valuable consideration. There is no proof that anything of value was given for the promise. The only consideration shown by the evidence was a good consideration, the moral obligation resting upon defendant to pay a just debt. For the first time the point is made here, that there was a variance between the allegations of the petition and the complaint. The variance is not such as to defeat plaintiff's right of recovery. If the character of the proof to show a consideration was a surprise to defendant, he should have pursued the statutory method, provided for taking advantage of such surprise. He failed to do so and cannot raise the question for the first time in an appellant court.

No reversible error appearing in the record, the judgment is affirmed. All concur.