Carr v. Barnes.

---

SPENCER E. CARR, Respondent, v. H. J. BARNES, Appellant.

Kansas City Court of Appeals, June 14, 1909.

1. **GUARANTOR: Subrogation.** Defendant purchased a stock of merchandise and gave a check for two thousand dollars to be applied on the purchase price if he performed his contract, otherwise to be forfeited as liquidated damages. Plaintiff guaranteed the performance of defendant's contract and on the latter's failure to perform the contract, plaintiff was compelled under his guarantee to take the stock of goods and pay for the same, and the check was assigned to him by the sellers. *Held:* That under the principle of subrogation, plaintiff was entitled to succeed to all the rights and remedies possessed by the obligee against the principal obligor in order that he might obtain such reimbursement of his loss as such securities would afford.

2. ———: **Bankruptcy.** Defendant voluntarily went into bankruptcy for no other purpose than to obtain a discharge from his obligation to pay a check which he had given in making

a contract to purchase a stock of goods, agreeing that the check should be taken as liquidated damages in case of his failure to perform the contract, otherwise to be applied on the purchase price of the goods. The schedule of debts filed by him included the claim and it was allowed by the referee. *Held*: That the allowance of the claim was an adjudication of all the issues properly before the court for its determination.

3. ———: ———. A debt proved against a bankrupt estate does not operate as an absolute but as a conditional extinguishment of the debt. The discharge of the debtor in bankruptcy does not satisfy the debt but merely releases the debtor of his legal obligation to pay, and where the bankrupt is not discharged, the creditor is remitted to his former rights and remedies.

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

AFFIRMED.

*Culver & Phillip* for appellant.

The court erred in refusing defendant's instruction No. 1. It has been held that an order of a referee in bankruptcy, or assignee allowing or disallowing a claim is a judgment, conclusive upon the parties as to the matter litigated, in any subsequent action on the same claim. Hargadine D. G. Co. v. Hudson, 122 Fed. (C. C. A.) 232; Sunkler v. McKenzie, 127 Cal. 554, 59 Pac. 982; Southern Planing Mill v. Doerhofer, 78 S. W. 882; Cody v. Vaughan, 53 Mo. App. 169; Eppright v. Kauffman, 90 Mo. 25; Nonsen v. Jacobs, 93 Mo. 331. If these cases are authority for the proposition that defendant is estopped to deny the existence of the claim because it has passed to judgment, it should follow that plaintiff cannot maintain this suit upon the check. 23 Cyc. 1108, cases collated; Cooksey v. Railroad, 74 Mo. 477.

*Brown & Dolman* for respondent.

Where a creditor of a bankrupt makes proof of his claim in the manner directed by the statute his verified statement of the claim makes out a prima-facie case for its allowance. If any party in interest objects to the allowance of such claim, he must assume the burden of producing evidence against it of at least equal probative force to that furnished by the claimant's sworn statement. In re Sumner, 101 Fed. 224; Whitney v. Dresser, 200 U. S. 532. The law makes it the duty of the bankrupt to examine all claims filed and if any person has proved a claim that should not be allowed, or if allowed, that should be re-examined and rejected, to disclose that fact immediately to his trustee. Section 7, subdivision 3, Bankruptcy Act, defining the duty of bankrupts, provides that he shall "examine the correctness of all proofs of claims filed against his estate." Subdivision 7: "In case of any person having to his knowledge proved a false claim against his estate, disclose that fact immediately to his trustee." This duty of the bankrupt is clearly stated in the case of In Re A. B. Carton & Co., 148 Fed. 63-64. Subdivision 8 of section 7 of the Bankruptcy Act provides that the bankrupt shall file "a list of his creditors . . . the amounts due each of them and the consideration therefor." This he did and now seeks to avoid the effect of his own act. That he will be estopped from denying either the validity of the debt or the consideration therefor is decided by all the authorities. In Re A. B. Carton & Co., 148 Fed. 64; Donnel v. Wright, 147 Mo. 647; Railroad v. U. S. 168, U. S. 48. The finding of the district court of the existence of a debt due from the party proceeded against to the petitioning creditor is conclusive in a collateral action of the fact that a debt of that amount was due. Sloan v. Lewis, 22 Wallace 150. When a bankrupt is refused a discharge the creditor is remitted to his former rights and remedies. Bran-

denburg on Bankruptcy, sec. 852, in which this author says: "Proving a debt does not of itself operate as an absolute extinguishment or satisfaction of the debt, the creditor being remitted to his former rights and remedies if the bankrupt is refused a discharge."

JOHNSON, J.—This suit is on a check for $2,000 drawn by defendant on a bank in St. Joseph, dated December 29, 1906, and protested for non-payment January 10, 1907. Plaintiff claims to be the assignee of the check which was made payable to the order of Funk Bros., a partnership doing business in Spokane, Washington. In the answer, defendant denies that plaintiff is the owner of the check and pleads that the check is unsupported by a valuable consideration. In the reply, plaintiff alleges that after this suit was begun, defendant filed a petition in bankruptcy in the United States District Court for the Western District of Missouri, and was adjudged a bankrupt; that he scheduled the check in suit as a liability; that plaintiff presented the check for allowance as a demand against the estate; that the same was adjudicated as a valid demand, and that afterward, defendant's petition for a discharge was heard and denied. It is alleged these facts estop defendant "from denying said debt or any part thereof." A jury was waived and, after hearing the evidence, the court found the issues for plaintiff and rendered judgment in his favor for the full amount of the check with interest from the day on which the suit was commenced. Defendant appealed.

Material facts disclosed by the evidence are as follows: Defendant, who lives in St. Joseph, went to Spokane, Washington, for the purpose of purchasing a stock of merchandise owned by Funk Brothers. He made certain false representations to plaintiff, a man of financial responsibility, who lived in Spokane and who represented as salesman certain eastern manufacturers and wholesale merchants. Relying on these

representations, plaintiff assisted defendant in inducing Funk Brothers to enter into a written contract with defendant, by the terms of which defendant agreed to purchase the stock of merchandise owned by that concern, which was estimated to be worth $40,000.   The contract required defendant to pay immediately $2,000, as earnest money, with the stipulation that if defendant performed the contract, the payment was to be applied on the purchase price and if he did not, it was to be forfeited to the vendors as liquidated damages. The goods were to be inventoried in the manner specified and on completion of the inventory, defendant was to pay $30,000 of the purchase price and give his notes for the remainder to be signed by plaintiff as surety. Plaintiff guaranteed the performance of this contract by defendant and, further, at the request of defendant, transmitted orders to manufacturers and wholesalers represented by him for new goods amounting to $25,000 to replenish the stock.    These orders were accepted and filled.    Pursuant to the contract, defendant gave his check to Funk Brothers for $2,000 on a bank in St. Joseph.    At his request, the check was held a time to give him an opportunity to deposit in the bank sufficient funds to cover it.    The check then was forwarded for collection and was protested for lack of funds. Subsequent efforts to induce defendant to perform his contract proved futile and plaintiff was compelled to make his guaranty good.    Accordingly he purchased and paid for the stock on the terms of the contract made with defendant and the check in suit was sold and assigned to him as part of the property included in the sale.    No other consideration was paid for the check.    The purchase of the goods and check proved an unprofitable venture to plaintiff.

This suit was brought March 6, 1907.    Defendant filed his petition in voluntary bankruptcy May 3, 1907. The schedule of debts filed by him was as follows:

"Unsecured creditors:    O. B. Funk and I. M.
    Funk, Spokane, Wash., contract dated
    29, Dec., 1906; check dated December 29,
    1906, payable to order of Funk Bros.,
    given in part purchase of a stock of goods
    owned by Funk Bros. and located at Spo-
    kane, Wash. ........ ...............$2,000.00

Spencer E. Carr claims to be assignee of
    check given Funk Bros. ............. 2,000.00
Hirsch Bros. Dry Goods Co. merchandise pur-
    chased by petitioner above described ...    49.59
Sol. Hirsch, St. Joseph, Mo., for money loan-
    ed on May 7, 1907 ...................    20.00

                                    $2,069.59"

Defendant was adjudged a bankrupt May 4th. He
then filed a motion to abate the present suit and the
court on the hearing of the motion continued the cause
generally and it was not reinstated on the docket un-
til the bankruptcy proceedings were closed. When the
petition in bankruptcy was filed, it was referred by the
clerk of the district court to the referee who immediately
issued notice for a meeting of creditors. No creditors
appearing at the meeting, a trustee was appointed by
the referee. The bankrupt had no assets not exempt
from execution. Plaintiff filed his demand in due form
and it was allowed by the referee June 14, 1907. The
record of the referee shows facts thus stated by counsel
for defendant at the trial: "There was notice given
that the first meeting of creditors would be held on May
18th. This record recites that on that day no credit-
ors appeared and no adjournment of the meeting, of
course, was had to any other time. That was the end
of that meeting. The record further shows that on
the 14th day of June, 1907, this claim was allowed by
the referee, which shows that there was no meeting of

the creditors at that time.    It shows no notice to any-body.    The record then proceeds with other things."
The bankrupt filed his petition for discharge September 25, 1907.    Plaintiff filed objections, among them:
"That said applicant has obtained property on credit from persons upon a materially false statement in writing made by such person for the purpose of obtaining such property on credit."   The objections were referred by the court to the referee "as special master to take evidence and report the same with his conclusions there-on to this court at the earliest day practicable."    The objections were sustained by the referee on the ground above stated.    The court, on recommendation of the referee, denied the petition for discharge and the estate was closed finally in that court March 2, 1908.    We quote from the record:

"Defendant introduced in evidence section 2 of General Order 12 of the General Orders in Bankruptcy, promulgated by the Supreme Court of the United States in pursuance to an act of Congress creating bankrupt courts and authorizing these proceedings; also General Order 23 of said General Orders in Bankruptcy, which said Section 2 of said General Order 12 is as follows:

"2.    The time when and place where the referee shall act upon the matters arising under the special cases referred to them shall be fixed by special order of the judge or by the referee, and at such times and places the referees may perform the duties which they are empowered by this act to perform.

"Said General Order No. 23 is as follows:    In all orders made by a referee it shall be recited, according as the fact may be, that notice was given and the manner thereof, or that the order was made by consent, or that no adverse interests were represented at the hearing, or that the order was made after hearing adverse interests."

At the conclusion of the evidence, the court refused to give the following declaration of law asked by defend-

Carr v. Barnes.

ant: "If the court sitting as a jury believes from the evidence that the defendant entered into a contract with Funk Brothers for the purchase of a certain stock of merchandise, and that the check sued on was given by the defendant to Funk Brothers in pursuance of the terms of said contract, and that the plaintiff was aware of said fact and knew the terms and conditions of said agreement at the time it was made, and that the plaintiff guaranteed to Funk Brothers the performance of said contract by the defendant and that afterwards the said plaintiff carried out and performed the contract for the defendant with Funk Brothers and that plaintiff paid Funk Brothers the sum of $40,000 which was the full purchase price of the stock of Merchandise and the said Funk Brothers received said $40,000 as the entire sum which the defendant was compelled to pay therefor under his said contract with the said Funk Brothers, then the finding must be for the defendant provided that plaintiff's claim on said check was not presented for allowance or allowed against the estate of the defendant in bankruptcy before Benjamin Woodson, Referee in Bankruptcy, at any meeting of the creditors of the bankrupt, of which notice was given and that no notice was given to the bankrupt or to any other creditors of said estate that said claim would be presented against his estate for allowance, and that the defendant did not know at or prior to the time said claim was allowed that it was to be presented for allowance." No other declarations were asked by either party and none was given by the court. It will be observed the court refused to declare as a matter of law that the check was unsupported by sufficient consideration. Defendant insists, however, that the evidence indisputably establishes the fact that there was no consideration. He argues that "Funk Brothers had no right to retain and apply the check to the payment of the purchase price of the stock because the entire purchase price was paid by plaintiff; nor did they have the right

to retain it as a forfeit because plaintiff carried out the contract for defendant and there was no forfeit. And as the plaintiff paid nothing for the check and knew the circumstances under which it was given, his rights were no greater than Funk Brothers, and, therefore, as they could not recover against defendant, neither could the plaintiff."

Plaintiff, in the discharge of his obligation as surety of defendant, was compelled to perform defendant's contract at a loss to himself.    Under the principle of subrogation, he was entitled to succeed to all the rights and remedies possessed by the obligee against the principal obligor in order that he might obtain such reimbursement for his loss as such securities would afford. Doubtless, it was in recognition of this right that Funk Brothers assigned the check to plaintiff, but we do not deem it necessary to decide whether the check, either in the hands of Funk Brothers or of plaintiff, was supported by a sufficient consideration or would serve as the basis of a cause of action for the reason that defendant is estopped from raising the issue of no consideration by his conduct in the bankruptcy court and by the adjudication of that issue in that tribunal.

There can be no question about the fact that defendant voluntarily went into bankruptcy for no other purpose than to obtain a discharge from the very obligation now in suit.    He made the solemn admission of record that the check evidenced a valid indebtedness— was supported by a sufficient consideration.    He stood by without objection and saw plaintiff present the check and procure its allowance as a demand against the estate.    That allowance was an adjudication by a court of competent jurisdiction of the fact that the indebtedness existed, that the check was not without a consideration.    Defendant argues that since the allowance was not made at a creditor's meeting, nor on notice to defendant, the adjudication must be regarded as a void judgment.    But this is not so.    By the filing of the

petition in bankruptcy, the adjudication that the petitioner was a bankrupt and the presentation by plaintiff of his demand in proper form, the bankruptcy court obtained complete jurisdiction over the parties, subject matter and demand, and being possessed of such jurisdiction, the regularity of its proceedings cannot be questioned in a collateral attack. If there were irregularities in the procedure, they could be utilized to the advantage of defendant only in a direct proceeding. We regard the allowance of the demand as an adjudication of all the issues properly before the court for its determination.

Further, it is insisted by defendant that if the allowance must be treated as an adjudication of all the issues properly before the court for its determination, then the cause of action on the check became merged into the judgment and, consequently, no action can be maintained on the check. Proving a debt against a bankrupt estate does not operate as an absolute but as a conditional extinguishment of the debt. "The discharge of the debtor in bankruptcy does not satisfy the debt but merely releases the debtor of his legal obligation to pay." [Bank v. Richards, 119 Mo. App. 18.] And the creditor is remitted to his former rights and remedies. But the restoration of the right to enforce the debt does not impair the force of its allowance against the estate of the bankrupt as an adjudication of the issues over which the bankruptcy court had jurisdiction at the time. Such issues are finally closed by the allowance, are *res adjudicata,* and neither party has the right to reopen them in subsequent litigation where, as in the present case, the parties, subject-matter and demand are the same as were in the bankruptcy proceeding.

We find no error in the record. The judgment is affirmed. All concur.