*Decision will be entered for respondent.*

CARL HESS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6024. Promulgated July 8, 1946.

*Samuel Tenenbaum, Esq.,* for the petitioner.
*S. Earl Heilman, Esq.,* for the respondent.

### OPINION.

TYSON, *Judge*: The sole issue here is whether the petitioner should be allowed to deduct the $1,100 which he paid to Reta H. Lerner in

1941. The petitioner claims the deduction under section 23 (e) of the Internal Revenue Code,[1] and contends that that amount, having been paid pursuant to the guaranty made in connection with the sale of his own stock, constitutes a loss incurred either in trade or business, or in a transaction entered into for profit though not connected with the trade or business. He relies upon *R. W. Hale*, 32 B. T. A. 356; affirmed on another point, 85 Fed. (2d) 819; *Marjorie Fleming Lloyd-Smith*, 40 B. T. A. 214; also affirmed on another point, 116 Fed. (2d) 642; certiorari denied, 313 U. S. 588; and *Robert S. Farrell*, 44 B. T. A. 238.

The respondent contends that the loss, assuming there was one, was not sustained in trade or business or in a transaction entered into for profit; and he presents two other objections which affect petitioner's right to the deduction.

The first objection is that the petitioner has failed to prove that he sold his shares of stock in the Parisian Co. to Reta H. Lerner at the times and in the amounts alleged by him, or that in making such sales the petitioner contracted to guarantee Reta H. Lerner against the loss of her investment. The petitioner testified that he sold to Reta H. Lerner 50 shares of preferred stock in 1925 and 200 shares of class B stock in 1930; that such shares were shares which were owned by him; and that at the time of the sales he agreed to guarantee her against loss. There is evidence in the record corroborating the petitioner's testimony and some which points the other way. We have carefully considered and weighed all the evidence in connection with this objection of respondent and have found the facts to be as testified to by petitioner and as corroborated by other evidence.

The second objection of the respondent is that, as Reta H. Lerner apparently had knowledge of the bankruptcy proceedings against the petitioner (and there is no evidence that she did not), the petitioner's obligation under the guaranty was a provable debt from which the petitioner was released by virtue of his discharge in bankruptcy, and that, as the petitioner's promise to pay made after the adjudication was not sufficiently clear, distinct, unequivocal, certain, and unambiguous to revive the debt, "the guaranties were not valid obligations in 1941, and that the payments made to Mrs. Lerner in that year thus amounted to gifts." We do not think this second objection of respondent is tenable. The petitioner guaranteed to pay Reta H. Ler-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

* * * * * * *

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

ner the amount of her investment in the stock in case it was lost. After the filing of the bankruptcy proceedings against the Parisian Co., which resulted in the extinction of all value of its stock, and, in May 1933, after petitioner had filed his petition in bankruptcy, he told Reta H. Lerner that the stock was worthless and that, while he would be unable for some time to repay the principal amount of her investment, he would do so when he could afford it, but that he would at once begin payment of interest at the rate of 5 per cent. The evidence shows that this promise was reduced to writing and that the principal to the extent of $1,100 was repaid in accordance therewith, as well as interest for various years. The action of the petitioner was not a mere acknowledgment of the obligation or a mere expression of an intention to pay, as the respondent contends. Though the promise was conditional, it was a valid condition and not void for uncertainty. It was sufficient to revive the debt. In such cases, the happening of the contingency (ability to pay), when properly alleged and proven, is all that is necessary to sustain an action against the promisor. 8 C. J. 2d, § 583, pp. 1575, 1576; 6 Am. Jur., § 533, p. 833; *Griel* v. *Solomon*, 82 Ala. 85; 2 So. 322; *Kraus* v. *Torry*, 146 Ala. 548; 40 So. 956; *Torrey* v. *Kraus*, 149 Ala. 200; 43 So. 184; *Dantzler* v. *Scheuer*, 203 Ala. 89; 82 So. 103; *Brashears* v. *Coombs*, 174 Ky. 344; 192 S. W. 482; *Taylor* v. *Nixon*, 4 Snead 352 (Tenn.). Since the debt was revived by reason of a new promise there is no basis for the respondent's contention that a "valid" obligation to pay did not exist in 1941.

The petitioner does not seriously press his contention that the loss was incurred in his trade or business, and we see no reason for holding, on the facts, that it was so incurred. The allowability of the deduction therefore must turn upon the determination of whether or not the loss was incurred by the petitioner in a transaction entered into for profit. Upon this question we think that the cases of *R. W. Hale*, *supra*, and *Marjorie Fleming Lloyd-Smith*, *supra*, support the position of the petitioner and are decisive.

The material facts in the *Hale* case are as follows: The taxpayer and his brother, who were partners, purchased stock of a corporation on June 6, 1929. A few weeks later they sold the stock to their sister at the same price which they had paid for it, subject to a written guaranty, effective for one year, to reimburse her for any loss which she might sustain upon the sale of the stock. In December of the same year she sold the stock at a loss and the taxpayer paid her his share of the loss pursuant to the guaranty. The Government, taking the view that the transaction which resulted in the loss consisted solely of the sale to the sister, argued that the transaction was not one for profit because the stock was sold to her at cost and that con-

sequently, there being no possibility of profit, the transaction could not have been entered into for profit. The Board of Tax Appeals rejected this view, and said, at page 357:

Respondent's position is based on the theory that the transaction which resulted in the loss in each case was the sale to Lura Hale. That was only one of several steps, all of which can and must be retraced to find the origin of the transaction. We thus go back to June 6, 1929, when the stock was acquired by petitioners. That acquisition marked the inception of a "transaction entered into for profit" within the meaning of the statute. The principle of relation back to inception is fundamental in the tax statutes. In order to determine gain or loss the amount realized is compared with the basis, and the basis is a figure determined as of the time of acquisition—with a few exceptions, as, for instance, acquisition prior to March 1, 1913. Following a transaction through, it is ordinarily ended and gain or loss computed when property is sold. But there are exceptions to that rule. Under the statute the amount of gain is the "amount realized" in excess of the basis and the amount of loss is excess of the basis over the "amount realized". Sec. 111, Revenue Act of 1928. In the present case, when at the end of the year the taxpayers cast up their accounts they found that the amount realized after making good this guaranty was less than the basis. Consequently they suffered a loss in 1929 arising out of a transaction entered into for profit, which loss is an allowable deduction. We need not, and do not, decide what the answer would be had the guaranty been satisfied in a later year.

Here the material facts are similar to those in the *Hale* case, except that there the guaranty was for one year while here it was for ten years; and there the loss sustained through payment on the guaranty was sustained in the same year in which the taxpayer acquired the stock, while here the loss sustained through payments on the guaranty was sustained by the taxpayer some years after he acquired the stock.

We think that the difference between the facts in the *Hale* case and those in the present case does not prevent application here of the principle of the *Hale* case. This principle was applied in *Marjorie Fleming Lloyd-Smith, supra*. In that case a "general" trust, of which the taxpayer was the sole beneficiary of both the income and corpus, in 1924 invested $4,000,000 of the trust funds in stock of a lumber company. In 1927 that company issued bonds in the amount of $3,000,000, payment of which was unconditionally guaranteed by the taxpayer and two others. In 1932 the financial condition of the lumber company was bad and continued to grow worse; and in that year it was disclosed that the two other guarantors were insolvent and that the bondholders were looking to the taxpayer, as the only guarantor financially responsible, to satisfy the major part of the guaranty. Under those circumstances, a compromise plan of readjustment was worked out between the bondholders and the taxpayer, and in 1933 the taxpayer paid $45,003.93 as expenses incurred in working out the plan. In holding that the taxpayer was entitled to deduct

that amount in 1933 as a loss arising out of "a transaction entered into for profit" under section 23 (e) (2), we said (p. 222):

The transaction involving this guaranty began when $4,000,000 of the trust funds were invested in the stock of the Sugar Pine Lumber Co. * * * The payments in connection with the guaranty were not made until 1933. * * * These expenditures occurred for the sole purpose of reducing her liability under the guaranty. As such, they are deductible as losses on a transaction entered into for profit.

See *Commissioner* v. *Bacher*, 102 Fed. (2d) 500, which cites the *Hale* case with approval.

Upon the authority of the *Hale* and *Marjorie Fleming Lloyd-Smith* cases, we hold that the petitioner is entitled to the deduction of $1,100 as a loss under section 23 (e) (2) of the Internal Revenue Code.

*Decision will be entered under Rule 50.*