OPINION. Arundell, Judge: With respect to the payments to Kronick, the respondent contends that neither petitioner in the taxable years could have been legally compelled to pay the debts owed to Kronick by the Jos. Greenspon’s Sons Iron & Steel Co. and that, therefore, the payments were not deductible either as bad debts or as losses. The reason advanced is that the petitioners had two valid legal defenses, namely, that their oral guarantees were within the Missouri statute of frauds (Mo. R. S. A., sec. 3354) and that the Missouri statute of limitations (Mo. R. S. A., secs. 1012-1014) had run. The Missouri statute of frauds, however, does not make an oral guaranty void, but only voidable. It merely gives the guarantor a personal defense, which he may waive. Feldman v. Levinson, 93 S. W. (2d) 31; Major v. St. Louis Union Trust Co., 64 S. W. (2d) 296; Cash v. Wysocki, 229 S. W. 428; cf. Joseph Rubin, 9 B. T. A. 1183. So, too, the statute of limitations does not destroy the obligation, but merely bars the remedy, Baron v. Kurn, 349 Mo. 1202; 164 S. W. (2d) 310, and gives a personal defense which may be waived, Hickey v. Sigillito, 162 S. W. (2d) 638. And, if a taxpayer chooses to waive his personal defenses and perform a contract, the Commissioner can not object. Francis M. Camp, 21 B. T. A. 962. So far as Abraham’s discharge in bankruptcy is concerned, the same principle applies. It, too, is a personal defense which may be waived by the bankrupt, and a new promise will revive the debt. Zavelo v. Reeves, 227 U. S. 625; Farmers' & Merchants' Bank v. Richards, 119 Mo. App. 18; 95 S. W. 290; Boone County Milling & Elevator Co. v. Lowery, 248 S. W. 623; Carl Hess, 7 T. C. 333. See Williston on Contracts, Rev. Ed., sec. 158. If a new promise will revive the debt, certainly where the obligation is completely performed and the contract executed, the Commissioner has no ground to object. Moreover, even if the obligation, springing as it did from a business transaction, were only a moral obligation, we do not understand that that fact of itself would preclude a deduction. See Herschel V. Jones, 1 B. T. A. 1226; cf. Flood v. United States, 133 Fed. (2d) 173, with respect to the deductibility of business expenses. We do not think, however, that the petitioners’ claims for deductions as bad debts are well taken. Doubtless upon satisfaction of their obligations as guarantors the petitioners would have recourse to the principal debtor, the old corporation, if it were then in existence; and, if the latter were unable to pay, deductions as bad debts might properly be allowable. See Joseph Rubin, supra. But, when the petitioners paid out these sums the old corporation had ceased to exist, having been completely liquidated in 1938, and so no debt from the old corporation to the petitioners could then arise. Cf. Frank B. Ingersoll, 7 T. C. 34. The payments made by the petitioners to Kronick, however, are deductible as losses under section 23 (e) of the code.[2] Even if, in strict contemplation of law, the losses may not be said to have been “incurred in [a] trade or business” of the petitioners as distinguished from that of the old corporation, but see Scherman v. Helvering, 74 Fed. (2d) 742, it is quite clear nevertheless that they were incurred in transactions which the petitioners “entered into for profit.” R. W. Hale, 32 B. T. A. 356; Marjorie Fleming Lloyd-Smith, 40 B. T. A. 214; Carl Hess, supra. That the payments made by petitioners to Kronick in the taxable years represented losses to them can not be seriously questioned; and, since these losses were the proximate result of transactions entered into for profit, they are deductible. What we have said with respect to the Kronick payments is likewise dispositive of the payments made by Abraham to the Missouri Bag Co. Respondent allowed the payments made by Louis on the ground that he was an endorser of the note. The evidence of record, however, clearly establishes the fact that Abraham likewise orally guaranteed this loan; that the-suit against Louis on his endorsement was not prosecuted to final judgment because both petitioners began making payments on the note; that Abraham paid 35 per cent of the amount due and Louis 65 per cent; and that the bag company dismissed the suit when the entire amount had been paid. In these circumstances, it can not be said that Abraham was a mere volunteer or that he paid the debt of another. We think there is as much reason for allowing Abraham to deduct his payments as there is for allowing Louis to deduct his. We therefore hold that the payments made by Abraham to the bag company are deductible as losses incurred in a transaction entered into for profit. With respect to the $268 paid by Abraham in settlement of the judgment recovered against him by the Cross Refining Co. and claimed as a deduction by him in 1943, we think the evidence likewise warrants the allowance thereof as a loss under section 23 (e). Decisions will ~be entered under Rule 60. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: [[Image here]] (e) Losses bt Individuals. — In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise— (1) if incurred in trade or business; or (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *